| | | |
|---|---|---|
| STATE OF MARYLAND | * | IN THE |
| | * | CIRCUIT COURT |
| vs. | * | FOR |
| | * | BALTIMORE COUNTY |
| SALVATORE SPINNATO | * | CASE NOS.: 96CR3299 |
| Defendant | | & |
| | * | 96CR4281 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MOTION TO DISMISS INDICTMENT

TO THE HONORABLE, THE JUDGES OF SAID COURT:

Now comes the Defendant, Salvatore Spinnato, by his attorney, Salvatore E. Anello, III, and pursuant to Maryland Rule 4-252(d) moves this Honorable Court to dismiss the indictment in the above captioned cases and in reasons therefore states the following:

1. In May 1997, the Prosecutor in the instant case, the Assistant State's Attorney of the State's Attorney's Office of Baltimore County, Mickey J. Norman, Chief of the Violent Crimes Unit, an agent, servant and employee of Sandra A. O'Connor, the State's Attorney for Baltimore County, voluntarily appeared on an episode of the television show "Unsolved Mysteries" and actively participated in the production of the show along with the alleged victims in the instant case, Mr. Lynn Hogg and Ms. Elizabeth Smith.

2. The episode presented was called "The Baltimore Con Man", and the show was a recreation of the events which are subject of the instant case and employed professional actors and actresses recreating the events in this case interspersed with actual

Exhibit No. 3
Civil Action No. JFM-02-4213

RECEIVED AND FILED

97 NOV 12 PM 1: 39

CLERK OF
THE CIRCUIT COURT
BALTIMORE COUNTY

appearances and interviews with Mr. Norman, Mr. Hogg and Ms. Smith.

3. The show that aired portrayed an alleged factual version of this case some crucial elements of which were not even alleged by the State's Attorney's Office in the indictment itself or in any of the statements of the victim, Mr. Hogg, to include his very detailed four (4) page single spaced Statement of Charges.

4. In the version of facts presented on Unsolved Mysteries, Defendant Shaffer is pictured with a 9mm. hand gun holding it against the back of the skull of the victim, Lynn Hogg. Additionally, Mr. Hogg is quoted on the show himself as saying that after the attack upon him at 5827 Oakland Road, the vacant home in Arbutus, he went straight to the police, whereas in actuality and in his four page statement given to the police the day after the incident, Mr. Hogg indicated in his statement that "Mr. Spinnato then had Mr. Hogg drive the two of them to a diner in Baltimore City. They sat in a booth and discussed plans for how Mr. Hogg was going to get out of the relationship."

5. The deliberate and voluntary appearance of Mr. Norman as the Chief of the Violent Crimes Unit of the State's Attorney's Office for Baltimore County on this episode of "Unsolved Mysteries" in May 1997, constituted a constructive and implicit endorsement of the version of factual events depicted by that television program.

6. The appearance of both Mr. Norman and Mr. Hogg on this program wherein the factual events were shown to the viewers which were sensationalized to the point of showing a gun to the back of Mr. Hogg's head was a deliberate attempt on the part of Mr. Norman,

2

the State's Attorney's Office for Baltimore Count and Mr. Hogg to portray the Defendant nationally as a violent and dangerous criminal. This must be contrasted starkly to the allegations in the instant case and Statement of Charges wherein the factual allegation in the real world was and is "Mr. Hogg saw Mr. Shaffer point to something in his belt which he thought to be a hand gun". Nowhere is it alleged in either the Statement of Charges or the indictment or the Police Criminal Incident Report that any gun was drawn on Mr. Hogg at any time, by either Mr. Spinnato or Co-Defendant Shaffer. Additionally, in his appearance on the show "Unsolved Mysteries" Mr. Norman in fact at one point in his on screen interview stated he feared that the Defendant Spinnato would be "violent in the future".

7. After the Defendant was later apprehended in Lewisville, Texas in late August 1997, Mr. Norman once again, granted an interview with Melody Simmons of the Baltimore Sun, excerpts of which appeared in the Sun Paper article by that reporter which was published on August 29, 1997. In the article, Mr. Norman is quoted as saying "his arrest kind of made my day...this guy needs to go to jail". (See exhibit A attached)

8. The prosecutorial misconduct and overreaching of The State's Attorney's Office in the instant case extended not only to appearances on nationally televised shows and statements to the Baltimore Sun Papers, but also to a deliberate and calculated attempt to deny Defendant Spinnato his Sixth Amendment right to counsel.

3

9. Before the Defendant failed to appear at the time of trial in January 1997, there was an issue as to whether or not the Defendant's attorney might be a witness in the case, and the issue was resolved between the Prosecution and the Defense by the implementation of a Stipulation. The facts involved in the Stipulation were that the Defendant's attorney, Salvatore E. Anello, III, saw the Defendant at a 7-11 in the Arbutus area on Francis Avenue on the morning of July 3, 1996 at approximately 9:15 a.m., and the attorney felt that was unusual because he knew that the Defendant did not live in the area since he had lost his home due to foreclosure approximately one year before and was now living at Canton Cove in the Canton Area of Baltimore City. Although the Stipulation was perfectly agreeable to the State before Defendant failed to appear for trial in January, once the Defendant was apprehended in August 1997, apparently the State changed it's position and then deemed the testimony of the Defendant's attorney on the witness stand to be essential. Obviously, the testimony that the Defendant was in the neighborhood of an alleged crime on the morning of the crime is no more essential than having a defense attorney testify to the identity of his own client.

10. The Prosecution very well knew the Defense attorney never saw the victim, Mr. Hogg, never saw the co-defendant, Mr. Shaffer, and saw no other evidence that was relevant to the crime whatsoever.

11. Thereafter, during the Defendant's period of flight from January through August of 1997, in several conversations between

4

the defense and the prosecution, the defense revealed that it had urged the Defendant on at least three (3) occasions to return to the State of Maryland and stand trial. After the Defendant was apprehended the prosecution then turned around and attempted to use those conversations between the defense and the prosecution to claim that the defense attorney was now a witness as to the failure of the Defendant to return to trial on the basis that he did not want to go to jail.

12. On September 1997, the Chief of the Violent Crime Unit for the State's Attorney's Office for Baltimore County, Mr. Norman, sent letter to the Defense attorney, demanding that he become a witness for the prosecution in regard to the prosecutions of both Defendant Spinnato and co-defendant Shaffer once again, cautioning him not to represent Defendant Spinnato for fear of violating the Rule of Professional Conduct 3.7 which prohibits a lawyer from acting as an advocate before trial where the lawyer is likely to be a necessary witness. (See exhibit B attached)

13. Rule 3.7 of Rules of Professional Conduct it clearly indicate that where the testimony of an attorney relates to an uncontested issue this is an exception to the bar of the attorney as a witness. Moreover, the defense never retreated from the proposed Stipulation of the Defendant's testimony, not the attorney's testimony, and the Defendant further agreed in the Stipulation that he did not come back because he did not want to go to jail. The proposed Stipulation clearly avoids any conflict with Rule 3.7 of the Rules of Professional Conduct and the attempt by

5

the Prosecution to threaten the Defendant's attorney with violation of that Rule was a naked and heavy handed attempt to deny the Defendant his Sixth Amendment right to the counsel of his choice since the Prosecution knew at every turn the Defendant would enter the proposed Stipulation. It should be further kept in mind that the Stipulation itself was only marginally relevant to the criminal charges at bar.

14. Although apparently Mr. Norman is well versed in Rule 3.7 of the Rules of Professional Conduct governing lawyers as witnesses apparently Mr. Norman is totally ignorant of the mandates of Rule 3.6 of the Rules of Professional Conduct governing a lawyers conduct in regard to Trial Publicity. Rule 3.6 of the Rules of Professional Conduct regarding trial publicity prohibits a lawyer or attorney from making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding.

15. In a criminal proceeding the Rule prohibits statements by the Prosecution as to the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness. The prohibitive statements also include any opinion as to the guilt or innocence of a defendant or suspect in criminal case or proceeding that could result in incarceration, and beyond that any statement that contains information that the attorney knows or reasonably should know is likely to be inadmissable as evidence in

a trial and would if disclosed create a substantial risk of prejudicing an impartial trial. Even a statement that the defendant has been charged with a crime unless that is accompanied by a statement explaining that the charge is merely an accusation and that the Defendant is presumed innocent until and unless proven guilty is similarly prohibited.

16. It would appear that both in his appearance on "Unsolved Mysteries", and in his later statement to Melody Simmons of the Sun Papers that "his arrest kind of made my day" and "this guy needs to go to jail", Mr. Norman has deliberately on behalf of both himself and Sandra A. O'Connor, the State's Attorney, knowingly violated at least five of these prohibitions. In fact, in Mr. Norman's last statement to Ms. Simmons of the Sun Papers, he appointed himself as judge, jury and executioner in that he tells the Sun Paper's readers that "this guy needs to go to jail". Moreover, in his statement on "Unsolved Mysteries" he goes on to warn the public of violence in the future from the Defendant when he is already in possession of Mr. Spinnato's criminal record which contains no indication of any violence whatsoever in his past.

17. Mr. Norman's appearance with the witnesses on "Unsolved Mysteries" constitutes nothing short of a deliberate attempt on the part of the Prosecution to materially prejudice an adjudicative proceeding which in the instant case is a criminal trial. His actions were further calculated to deny the Defendant his right to a fair trial both in the narration and depiction of events which Mr. Norman knew to be false and his further attempts to deny the

Defendant his Sixth Amendment right to counsel by forcing the Defendant's attorney to be a witness for the Prosecution in the case.

18. Mr. Norman, Sandra A. O'Connor, State's Attorney for Baltimore County, and every other supervising personnel in their office by virtue of the violation of Rule 3.6 of the Rules of Professional Conduct by Mr. Norman have forfeited their right to prosecute this case and further denied the Defendant his right to a fair trial by the creation of nationwide adverse pre-trial publicity by depicting events which they knew to be false.

19. Rule 3.8 of the Rules of Professional Conduct requires that a Prosecutor refrain from prosecuting a charge that the Prosecutor knows is not supported by probable cause. In the instant case, Mr. Norman created a depiction of events on the show "Unsolved Mysteries" that he knew was not only not supported by probable cause but was in fact a falsehood.

WHEREFORE, the Defendant prays:

A. That the Assistant State's Attorney, Mickey J. Norman, State's Attorney Sandra A. O'Connor, and every other member of the State's Attorney's Office of Baltimore County be removed from prosecution of this case due to extreme prosecutorial misconduct;

B. That the charges against the Defendant be dismissed with prejudice;

C. That the Defendant be granted a hearing on this Motion;

D. And for such other and further relief as this Honorable Court may seem just and proper.

_____
SALVATORE E. ANELLO, III
1334 Sulphur Spring Road
P.O. Box 18280
Baltimore, Maryland 21227
410-242-6600
Attorney for Defendant

## MEMORANDUM OF POINTS AND AUTHORITY

1. Maryland Rule 4-252(d)

2. Rule 3.6 of the Rules of Professional Conduct

3. Rule 3.7 of the Rules of Professional Conduct

4. Rule 3.8 of the Rules of Professional Conduct

5. Venable v. State, 108 Md. App. 395 672 A.2d 123 (1996)

_____
SALVATORE E. ANELLO, III
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this ~~11~~th day of November, 1997, a copy of the aforegoing Motion to Dismiss Indictment and supporting Memorandum ~~as mailed, postage pre-paid~~, to Mickey J. Norman, Chief Violent Crimes, State's Attorney's Office for Baltimore County, 401 Bosley Avenue, Towson, Maryland 21204 and to Charles P. Brown, Esquire, 8203 Harford Road, Baltimore, Maryland 21234, attorney for Defendant, Paul H. Shaffer.

_____
SALVATORE E. ANELLO, III
Attorney for Defendant

# Careless act leads to arrest of con man, felon Spinnato

## After 7 months on the run, he is captured in Texas

By MELODY SIMMONS
SUN STAFF

In the end, Salvatore Pasquale Spinnato — con artist, convicted felon and man of many aliases — was caught because he forgot to close the car door.

The 54-year-old East Baltimore man, sought for seven months by Baltimore County police and the FBI on charges of kidnapping and flight to avoid prosecution, was arrested early Tuesday at a Days Inn in Lewisville, Texas, by police investigating why the door of a white van stood open in the motel's parking lot.

Local prosecutors delighted yesterday in the arrest of Spinnato, who has posed as the owner of a Salvadoran shrimp farm and a Johns Hopkins Hospital brain surgeon and whose flight was featured in May on "Unsolved Mysteries," a crime-solving program on national television.

Prosecutors plan to extradite Spinnato by early next month on charges of kidnapping, assault and use of a handgun to commit a crime.

"His arrest kind of made my day," said Mickey J. Norman, an assistant state attorney. "This guy needs to go to jail."

The search for Spinnato began Jan. 21 — the day he was to appear before Judge John F. Fader in Baltimore County Circuit Court on charges of kidnapping and assault with an electric shock device of Lynn Hogg, who was dating Spinnato's former wife, Elizabeth Smith.

A second man, Homer Shaffer, also is charged with kidnapping in the crime and is scheduled to stand trial Sept. 9.

Spinnato fled without a trace, police said, and was missing for seven months. On Aug. 20, Norman asked the Baltimore FBI office to issue a federal flight-to-avoid-prosecution warrant based on Spinnato's history of running con schemes in many states, including Tennessee in July 1996, the warrant states.

It was nearly 4 a.m. Tuesday when police in Lewisville, a small town 40 miles northwest of Dallas, were called to the Days Inn on Interstate 35 to investigate a suspicious car in the lot.

Officers ran a routine computer check on the vehicle's Maryland license tag, said Sgt. D. L. Ward of the Denton County Sheriff's Department.

"They got a hit on a subject armed and dangerous who was wanted in Maryland and by the FBI," Ward said yesterday. "They went to the motel office, found his room number, knocked on [the] door and he surrendered without incident."

Spinnato nervously identified himself to Lewisville police as "Salvatore Oliverio," Norman said. That's the identity given Spinnato by federal prosecutors when they placed him in the federal witness protection program in the 1970s after his testimony helped convict former Del. George J. Santoni on extortion charges in a high-profile public corruption trial.

But the false name did not fool police, who locked Spinnato in the



Salvatore P. Spinnato faces charges that include kidnapping and assault.

Denton County jail, where Spinnato agreed to extradition yesterday, police said. Police also said they did not know why Spinnato was in Lewisville.

News of Spinnato's arrest was welcomed by Smith.

"What a relief!" she said yesterday. "I can't believe what a heavy weight ... has been lifted after hearing this news. I don't have to look over my shoulder."

According to court papers, Spinnato told Smith during their courtship and marriage that he had been a Navy SEAL, a prisoner of war in Vietnam, a nurse and an FBI agent who left the bureau after threats on his life.

Spinnato has a lengthy criminal record including a conviction for fraud. He also led people to invest in phony enterprises, according to the FBI.

The kidnapping incident arose after police said Hogg was lured to a vacant Arbutus house, tied up and tortured with electric shocks while Spinnato forced him to vow to break up with Smith.

Sun 8/29/97