```
STATE OF MARYLAND        *    IN THE

        vs               *    CIRCUIT COURT

                         *    FOR

SALVATORE SPINNATO       *    BALTIMORE COUNTY

        Defendant        *    CASE NO: 96CR4281 & 96CR3299
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MOTION TO RECUSE JUDGE

TO THE HONORABLE, THE JUDGES OF SAID COURT:

Now comes the Defendant, Salvatore Spinnato, by his attorney, Salvatore E. Anello, III, and pursuant to Maryland Rule 4-252(d) moves this Honorable Court to recuse Judge Barbara Kerr Howe as the presiding Judge in the above captioned case and as reasons therefore states the following:

### STATEMENT OF FACTS

1. On November 24, 1997, Judge Howe was the presiding Judge and trier of facts who heard the Defendant's Motion to Dismiss Indictment and also dismissal of Mickey J. Norman, the Assistant State's Attorney for Baltimore County, from the above captioned case and at the same time, the Judge made a ruling in regard to the State's opposition to the Defendant's Plea of Not Criminally Responsible.

2. That apparently on November 26, 1997, Judge John Grason Turnbull, II, of this court was the Administrative Judge and ruled that said Judge Howe would be the Judge specially assigned to this

Exhibit No. 4
Civil Action No. JFM-02-4213

1

case.

3. That on December 5, 1997, Judge Howe issued an Order stating that the trial in the above captioned case would be heard on Monday, February 9, 1998 for approximately three (3) days, with Judge Howe as the presiding Judge.

4. At the time of the hearing on the Defendant's Motion to Dismiss Indictment and the State's opposition to Not Criminally Responsible Plea on November 24, 1997, Judge Howe made certain remarks and was exposed to extrajudicial communications, publicity and information which disqualifies the Judge to sit in the trial of this matter as the presiding Judge.

5. In ruling on the Defendant's Motion to Dismiss the Indictment, the court displayed a bias in favor of the prosecution and against the Defendant by the fact that the court took no action whatsoever against the Assistant State's Attorney or Baltimore County who clearly had violated Rule 3.6 of the Rules of Professional Conduct in regard to the prosecuting attorneys' prohibitions regarding pre-trial publicity. In fact, even though the Prosecutor had appeared in person on the television program "Unsolved Mysteries" and was interviewed on camera on that show, the Judge wasn't even remotely critical of the prosecutor's conduct.

6. It is the Defendant's belief that the court's bias against the Defendant overwhelmed any concerns the court may have had in regard to the misconduct of the prosecution in going forward and appearing on a television show which basically portrayed the

2

Defendant as a career criminal and further presented to the viewer a sensationalized version of the facts in the instant case.

7. As part of the evidence in regard to the Defendant's Motion to Dismiss Indictment, the Defendant was compelled to produce a tape of the T.V. show itself which aired in May 1997, with an episode on "Unsolved Mysteries" and the court had to watch the entirety of the broadcast in order to assess the involvement of the Assistant State's Attorney in the show and further in the creation of adverse pre-trial publicity.

8. Judge Howe, after watching the entirety of the broadcast, which again basically portrayed the Defendant as a career criminal and con man and after further hearing direct testimony from the Assistant State's Attorney who never denied appearing on the broadcast and who had no concern as to the overall content of the broadcast, the court then proceeded to rule and dismissed the Defendant's Motion to Dismiss Indictment and also ruled on the State's Motion in opposition to the NCR Plea without any criticism of the Assistant State's Attorney involved nor even a caution to him to refrain from such conduct in the future.

9. In ruling that the NCR Plea should go forward and in signing the Order of the court dated November 24, 1997 which in fact ordered the Defendant to be examined and evaluated by the Maryland Department of Health and Mental Hygiene as to the Defendant's criminal responsibility, the court remarked in signing the Order that the court believes this examination to be a "waste of time".

10. This comment by the Judge and attitude evinced at the time she ordered the examination for criminal responsibility portrayed an underlying bias against the Defendant which renders the Judge unfit to conduct a fair and impartial trial to which the Defendant is constitutionally entitled.

11. The bias contained in the Judge's remark is further exposed when one considers the fact that the only professional report that the court had in front of it at the time that the remark was made was the report of Michael K. Spodak, M.D., court psychiatrist, dated November 21, 1997, which stated that "as a result of my initial screening and evaluation of Mr. Spinnato, there is sufficient basis to raise the possibility that may meet the legal test for being found not criminally responsible". Accordingly, the Judge's statement that the examination would be a waste of time could not possibly come from any reasonable or factual basis but was based solely on the court's bias that the Defendant was an untrustworthy individual who might be attempting to deceive the court and the doctors. The only basis for such a remark and belief by the Judge was her viewing of the show "Unsolved Mysteries" which in fact demonstrated with ample Hollywood embellishment and hyperbole the Defendant was some kind of legendary con man.

12. The episode of "Unsolved Mysteries" which the Judge viewed with ample Hollywood hyperbole and embellishment showed a depiction of events and circumstances forming the factual basis of the instant case and indictment against the Defendant and further

4



went on to unfairly and inaccurately portray the Defendant as a career criminal.

13. The episode of "Unsolved Mysteries" falsely portrayed the Defendant as a career criminal and con man who had concealed from his former wife a lifetime of nefarious activities. Among other things, the show stated that the Defendant had used over twenty (20) aliases to facilitate his criminal career and had further deceived the then wife as to who he was and further concealed from her the criminal activities of a lifetime.

14. It was obvious in the Judge's demeanor and ruling in regard to both the Motion to Dismiss the Indictment and in regard to the Motion in Opposition to the Plea of Not Criminally Responsible, the Judge had been seduced and unduly influenced to the detriment of the Defendant by this highly prejudicial fictional television portrayal which basically cast the Defendant as "public enemy number one".

15. During the course of the episode, the Judge saw and heard from various individuals who literally hated the Defendant for reasons having absolutely nothing to do with the instant charges. The court heard from Butch Hodson, the F.B.I. Agent, Dan Rodericks, a columnist for the Baltimore Sunpapers, Lynn Hogg, the putative victim herein, the Prosecutor, Mickey Norman, and possibly worst of all for the interest of the Defendant, his ex-wife, Elizabeth Smith, with whom he had litigated for over four (4) years in this court in a bitterly contested annulment and divorce proceeding. It is hard to imagine any greater prejudice to the Defendant's right


to a fair trial than the judge hearing from these highly biased individuals. Once again, the Judge's comment that the referral to the Maryland Department of Health and Mental Hygiene to evaluate the Not Criminally Responsible Plea was a waste of time, demonstrates the fact that the Judge had been improperly influenced by the show itself and these individuals who appeared in the show.

16. In reviewing the segment from "Unsolved Mysteries', the judge also saw a vivid depiction of the events that form the basis of this case to include facts which are contradicted by the victim's own statement given to the police in this case. The court saw the co-defendant, Paul Homer Shaffer, in the television portrayal, placing a hand gun to the back of the victims head, which until the showing of this segment of "Unsolved Mysteries", was nowhere contained in the police report, and in fact the evidence will show at trial, never occurred.

17. The Judge's necessary viewing of the show caused opinions of the Defendant's character and recollections of the facts in the mind and memory of the Judge which render her unfit to sit as the fair and impartial Judge in the instant case.

<p style="text-align:center">ARGUMENT</p>

It is clear under Maryland Law that a Judge may be required to recuse him or herself if he or she is prejudiced toward or biased against a Defendant. There are times when to protect the Defendant's and the public's right to a fair trial, and to ensure that the trial Judge's impartibility cannot reasonably be questioned that the Judge must remove him or herself from sitting

as the trier of fact in the Defendant's criminal trial. There are times when a Judge as a trier of fact may unwittingly be influenced by some previous exposure to the facts of a particular case. In re George G 64 Md. App 70, 494 A.2d 247 (1985). Ex Parte communications to the court may result in the denial of the right to an impartial tribunal. Smith v State 64 Md. App. 625 498 A.2d 284 (1985) Personal knowledge obtained by a Judge from extra judicial sources can become the basis for judicial disqualification. Boyd v State 321 Md. 69, 581 A.2d 1 (1990). Moreover, Rule 1231 Cannon 3C of the Maryland Code of Judicial Responsibility requires that a Judge should not participate in a proceeding in which his or her impartiality might reasonably be questioned. Jefferson-El v State 330 Md. 99, 622 A.2d 737 (1993). It is further the law in Maryland that a trial Judge showing his disbelief of the witness testimony is beyond the line of impartiality over which a Judge must not step. Cardin v State 73 Md. App. 200, 533 A.2d 928 (1987). The Court of Appeals has further rejected the argument that the impartiality or bias of a Judge is immaterial with respect to a jury trial based on the premise that in a jury trial, the Judge is not the trier of fact. The Court of Appeals has made it clear that in the capacity of trial Judge, the Judge has the dual role of not only the trier of fact (judging the credibility and weight of the evidence) but also that of the Judge of the law of the case (passing upon the admissability of evidence). Consequently, the bias and prejudice of a trial Judge can severely prejudice the Defendant to a fair

trial within the context of a jury trial. State v Hutchinson 260 Md. 227 271 A.2d 641 (1970)

The actions, statements and conduct of the court at the time of the hearing on the Motion to Dismiss Indictment and the Motion in opposition to the Not Criminally Responsible Plea on November 24, 1997 can be viewed against this backdrop of the relevant legal standards for impropriety and disqualification. The comment from the Court that the NCR examination was a waste of time when the only evidence in front of the Court was the report of Dr. Spodak indicating the examination was indicated and justified with no other evidence before Judge Howe to indicate that it was not valid shows in accordance with Cardin v States Supra that the Court had a disbelief in the validity of the Defendant's effort to pursue the Not Criminally Responsible Plea which was based on nothing else than the court's own bias against the Defendant which was engendered in the court by the court's viewing of the episode of "Unsolved Mysteries". After viewing the episode of "Unsolved Mysteries" and seeing the fictionalized version of the facts relevant to the case and after further hearing the condemning statements as to the Defendant's character by his wife, Dan Rodericks, Special Agent Hodson, the victim herein, Lynn Hogg, the victim herein and Mr. Norman from the State's Attorney's Office, the court gained personal knowledge of the case which it gleaned from extra judicial sources and causes that appearance of impropriety which mandates that the court should recuse itself. Boyd v State Supra. It is further obvious, that the courts

attitude, demeanor and comments in regard to the said Motion and Motion in Opposition the court has been unwittingly influenced by this extrajudicial exposure to the facts of the case. <u>In Re George G.</u> Supra   Accordingly, this is one of those times when to protect the Defendant's and the public's right to a fair trial and to ensure that the trial Judge's impartiality cannot reasonably be questioned, the Judge must remove herself from sitting as the trial Judge in the instant case, and she is disqualified not only as the trier of fact but also as Judge of the law of the case, since there is a possibility of bias in the court's consideration of the credibility and weight of the evidence should the court be the trier of facts and also bias in regard to the admissability of evidence as the court sits as the Judge of the law of the case. <u>State v Hutchinson</u> Supra and <u>In Re George</u> Supra.

In the last analysis, a Judge should not participate in a proceeding which his or her impartiality might reasonably be questioned. <u>Jefferson-L v State</u> Supra.  In the instant case the law clearly mandates that the court recuse itself as both the trier of fact and judge of the law in order to ensure and protect the Defendant's and the public's right to a fair trial and to ensure that the trial court's impartiality not reasonably be questioned.

Respectfully submitted:

SALVATORE E. ANELLO, III
1334 Sulphur Spring Road
P.O. Box 18280
Baltimore, Maryland 21227
410-242-6600
Attorney for Defendant

## MEMORANDUM OF POINTS AND AUTHORITIES

1. Maryland Rule 4-252 (d)
2. <u>State v Hutchinson</u> 260 Md. 227 271 A.2d 641 (1970)
3. <u>In re George G</u> 64 Md. App 70, 494 A.2d 247 (1985)
4. <u>Smith v State</u> 64 Md. App. 625 498 A.2d 284 (1985)
5. <u>Cardin v State</u> 73 Md. App. 200, 533 A.2d 928 (1987)
6. <u>Boyd v State</u> 321 Md. 69, 581 A.2d 1 (1990)
7. <u>Jefferson-El v State</u> 330 Md. 99, 622 A.2d 737 (1993)

_____
SALVATORE E. ANELLO, III
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 3rd day of February, 1998, a copy of the aforegoing Motion to Recuse Judge and Supporting Memorandum was hand delivered, to Mickey J. Norman, Office of the State's Attorney for Baltimore County, 401 Bosley Avenue, Towson, Maryland 21204.

_____
SALVATORE E. ANELLO, III
Attorney for Defendant