~~January 22nd, 2002~~ January 27, 2003

Suzanne Mensh
Clerk of Court for Baltimore County
401 Bosley Avenue
Towson, Maryland 21204

96 CR 3299
CR 96 3299

Dear Ms. Mensh:

I am enclosing a Petition for a Writ of Habeas Corpus that I am asking to have filed in Case No. 96CR-3299.

Please also note that I have included a copy of the State's Attorney Office as well for you to send to them.

Sincerely

Salvatore Spinnato, 272-280
13800 McMullen Hwy.
Cumberland Md. 21502

cc:file

**CRIMINAL DEPT.   JAN 31 2003**

Exhibit No. 7
Civil Action No. JFM-02-4213

SALVATORE P. SPINNATO           *   IN THE CIRCUIT COURT

                                       *   FOR BALTIMORE COUNTY

             V                              *   96CR-3299

                                       *

STATE OF MARYLAND                  *

                                       *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MOTION FOR THE ISSUANCE OF A WRIT OF HABEAS CORPUS
AND A REQUEST FOR A HEARING

     NOW COMES Salvatore Spinnato, acting in propia persona and submits that he is being unlawfully confined and had been unlawfully deprived of his liberty in contravention of the laws of The Constitution of The United States, and The State of Maryland.

Your petitioner is seeking relief to correct a manifest injustice pursuant to common law remedy provided by The Writ of Habeas Corpus.

I offer the following postscript in support:

1. Pursuant to Md. Ann. Code Cts. and Judicial Proc. Art. Sec. 3-701, any individual Circuit Court Judge or Appellate Judge including any sitting judge of The Court of Special Appeals of Maryland, has the power and authority to exercise jurisdiction in all matters which pertain to Habeas Corpus, even though The Court of Special Appeals as a court have on Appellate Jurisdiction.

2. Pursuant to Md. Code Cts. and Jud. Proc. Art. Section 3-702, any individual confined unlawfully may petition for a Writ of Habeas Corpus to inquire into such confinement.

3. Pursuant to Md. Rule 15-302 Et. Seq.

4. Your petitioner believes that he was deprived of both his State and Federal Constitutional Rights, was Denied Due Process of Law, The Right to a Fair Trial, and was therefore convicted unlawfully.

1

## HISTORY OF CASE

a. Petitioner believes that he is being held unlawfully and deprived of his liberty in violation of the COnstitution of The State of Maryland and The United States.

b. Petitioner is presently confined in the western correctional institution at 13800 McMullen Highway, Cumberland Md.

c. Petitioner alleges that he is being held unlawfully by Warden Jon Galley, and the State of Maryland in confluence with an unlawfully founded Order of the Circuit Court for Baltimore County in regards to 96CR-3299.

d. Petitioner's present confinement and sentence to the D.O.C. is pursuant to a Order of the Court rendered by Judge Barbara Howe, on March 10, 1998 to a term of 35 years.

e. Petitioner was found guilty of Kidnapping, and Assault with intent to disable.

f. Petitioner applied for a 3 judge panel reiew and that panel reduced the sentence to 25 years.

g. Petitioner applied for Direct Appeal which was affirmed in an unreported opinion on April 22, 1999.

h. Petitioner **strongly alleges** that the Petition is a direct result of the **failure of appellate counsel** to provide effective assistance of counsel and will be explained in more detail in this Petition.

i. Petitioner applied for a Writ of Certiorari which was denied in August 1999.

j. Petitioner applied for Post Conviction relief in May 1999.

k. Petitioner was given a hearing before Judge Cadigan on February 01, 2001.

l. Judge Cadigan finally denied relief on February 03, 2002.

m. Petitioner filed for Leave to Appeal to the Court of Special Appeals on February 28, 2002.

n. On December 24, 2002 a Final Mandate was issued denying relief **without opinion**.

Petitioner avers that he has a Constitutional Right to Effective Assistance of Counsel **at every stage**, and that I also have a Constitutional Right to take part in my own appeal. In the instant case, this petitioner was denied those rights for the reasons asserted in the grounds raised in this petition.

Petitioner further asserts that he believed from the start the information provided in the brochure provided to me by the Public Defender's Office that I could rely on Appellate Counsel to **Effectively Assist Me** in my own Appeal. This is especially true because I am **unschooled in the law**, and I have never attended law School nor have I ever attended any classes or related courses.

Any assistance that I have received has come from other inmates with very little or no training themselves. I DO NOT have access to a Law Library, and my reliance on Appellate Counsel during my Appeal **WAS TOTAL**. In addition, I am also averring that I have never Knowingly and Intelligently waived any issue presented in any of my pro-se petitions seeking post conviction relief for review under <u>Curtis or McElroy</u>. Therefore, I believe that I am Constitutionally Entitled to relief and to have these issues resolved on their merits.

Petitioner further asserts that in <u>Curtis v State</u> 284 Md 132 (1978), it was found that when a petitioner establishes that he did not in fact **knowingly and intelligently** fail to raise an issue previously, such issue cannot be deemed to have been waived; <u>Curtis</u> 284 Md at 140. Allegations relating to fundamental constitutional rights are always subject to this standard, <u>McElroy v State</u> 329 Md. 136, 140 (1991).

In the Instant case there should be an evidentiary hearing as to why Appellate Counsel failed to investigate and present evidence to the Appellate Court that Officer William Rubie had complained to my trial attorney that the Prosecutor had attempted to influence his testimony, and that the same Officer had complained that the State's Chief Witness had been coached by the prosecutor prior to trial and for his testimony at trial.

THEREFORE for the reasons set forth in this petition, I am alleging that I did not receive effective assistance of counsel **ON APPEAL**, and that if he had performed competently in this case **by investigating** with Anello's office that Officer Rubie had complained to him about an attempt to influence his testimony, there would have been at least <u>a substantial possibility</u> that the outcome of my direct appeal would have been different.

This petitioner HAS ALWAYS MAINTAINED that this conviction of kidnapping and assault was based on: (1.) (F)raud; (2.) Prosecutorial Misconduct; and (3.) A Denial of Due Process, and the Right to a Fair and Impartial trial.

These allegations of <u>Fraud and Misconduct</u> are evident when one examines two specific Pre-trial Motions mentioned in this petition. They are The Motion To Dismiss filed in November of 1997, and The Motion to Recuse which was filed in February of 1998.

The common law and The Maryland Rules granted the power to examine and inquire into the propriety and legality of a conviction and a sentence at any time due to <u>(F)raud</u>, Mistake, and Irregularity. In doing so they made no distinction whether the FRAUD be "Actual" or "Constructive" Fraud. This is <u>especially true</u> under Maryland Rule 4-345(b). That Rule makes it clear that the court does have revisory power of a judgment of sentence <u>beyond 90 days</u> in the event of FRAUD, mistake, or irregularity.

In addition to the Pre-trial Motions discussed herein, my trial attorney, Salvatore E. Anello, was then approached by Officer William Rubie of The Baltimore County Police Department <u>(14) months after my trial</u>, and had complained to Mr. Anello:
1. That the prosecutor had pressured him **repeatedly to change his testimony**;
2. That the prosecutor had "suggested" to Rubie that he had been "mistaken" in failing to describe the alleged "handgun";
3. That the prosecutor had also "suggested" to Rubie that he had "overlooked" certain details and threats allegedly made to Hogg;
4. Rubie also complained to Anello that the prosecutor had **"coached"** Hogg prior to trial and for use at trial.

Petitioner alleges that this late revelation by Officer Rubie did not occur until April 1999, which was 14 months after trial and therefore it **Prevented** my trial attorney from raising any of Officer Rubie's concerns regarding Prosecutorial Misconduct to the (O)riginal (T)rier of (F)act.

Petitioner also alleges that this late revelation by Officer Rubie indicates that he had to have known of concerns PRIOR TO TRIAL, and that he therefore had to have made a knowing and willful decision to withhold this information from the defense which then operated to our prejudice since we were not able to present any of his concerns to the Court of Special Appeals for their assessment during the Appellate Process.

3.

Throughout the prosecution of this case, <u>this defendant</u> has **strenuously complained** of numerous allegations of fraud which I believe led to a Denied of my Constitutional right to receive a Fair and Impartial trial, and that I was also Denied Due Process of Law, die to these Allegations of Fraud and Misconduct on the part of the prosecution.

These allegations were brought before the Original trier of fact in pre-trial motions such as a MOTION TO DISMISS which was filed in November, 1997. This was then followed by a MOTION TO RECUSE filed in February, 1998.

In that MOTION TO DISMISS, this petitioner had alleged the following issues raised by my trial attorney in regards to a Fictitious "re-enactment" that was aired on National Television in May of 1997, and then again in February 1999 **two weeks before trial**.

In this HIGHLY FICTIONAL hollywood version of events the prosecutor had appeared as did his chief witness, and both of them gave ON CAMERA INTERVIEWS. The program then focused on THE STATE'S VERSION OF FACTUAL EVENTS. Some of these **fictional portrayals** were NEVER ALLEGED in the Information that was filed, never alleged by the witness to the investigating officer, and were not even alleged by the prosecutor himself when he amended the charges. This **fictional portrayal of a gun** being pointed at Mr. Hogg BY SOME HIRED ACTOR was <u>never alleged</u> until it came time for the filming of this "re-enactment".

In his summary of the MOTION TO DISMISS, my trial attorney made this impassioned summary:
> "The state has a duty to act impartially towards both the state and the accused in a matter, and if they breach their duty as a matter of public policy they should be disqualified as a matter of public policy. They should be disqualified from participating in that criminal matter. The Canon of Ethics because it has to do with prosecutorial misconduct in violation of specific rules. A **prosecutor must avoid participation** in a case in circumstances where <u>amplification of partiality</u> may cast a shadow over the integrity of it's office. The **appearance of evil** in connection with the administration of public office should and must be avoided. Actual prejudice will be presumed to exist as a matter of law. Our ethics are contained in these rules, codes of professional responsibility and how we conduct ourselves, and if they are violated, prejudice is presumed to exist. The prosecution here <u>HAS ACTIVELY ALMOST JOYOUSLY PARTICIPATED</u> in the **manufacture of PRE-TRIAL PUBLICITY** and that is what the rule is meant to prevent in one step.

4

And once it is transcribed you must look at public opinion because it gives public
scandal to the administration of justice when you become involved in the
<u>manufacture of pre-trial publicity</u> without concern, appearing in broadcasts then
you become more than an advocate. The you can't fairly fulfill that role within the
administration of justice when you become involved in a case to the point that you
are manufacturing pre-trial publicity without concern, then you become more than
an advocate. Then you can't fairly fulfill that role within the administration of
justice. The system is the victim here, my client is also the victim because they
took a case and let it get out of control **by their own efforts**. It shouldn't have
gone on the show. The court has to act, CORRECT THE SITUATION and has the power
to do so. Here we can see actual prejudice in the public statements. It is a FALSE
PORTRAYAL of events that occurred; a portrayal <u>that the state</u> **participated in**
and it puts the system of justice what we're all involved in here **creating false
pre-trial publicity**. Denying his Sixth Amendment right to a Fair trial. The state
engaging in violating this rule. You're denying this defendant his right to a fair
trial in the Sixth Amendment, The United States Constitution, and The Maryland
Declaration of Rights. In nothing where it is written that the code of professional
responsibility rule is anymore important that the <u>fabrication</u> of false pre-trial
publicity."

In that MOTION TO DISMISS my trial attorney had requested the following relief:
1.) That the Assistant States Attorney, Mickey J. Norman, State's Atty. Sandra A.
    O'Connor and every other member of the Baltimore County States Atty. Office be
    removed from prosecuting this case due to extreme prosecutorial misconduct;
2.) That the charges against the defendant be dismissed with prejudice;
3.) That the defendant be granted a hearing on this motion;
4.) And for such other relief as this Honorable Court may deem just and proper.

PLEASE NOTE: (A)ppellate Counsel **failed** to raise a single allegation contained in this
Motion to Dismiss on direct appeal to the court of Special Appeals.
Not only did he fail to raise a single issue raised by my trial attorney
but he FAILED to get <u>this hearing</u> **transcribed** for the Court of Special
Appeals as noted by Judge Davis at page (13) **footnote** 3, and again on
page 14 at **footnote** 4 of his unreported opinion which I believe shows
that Judge Davis and the panel **were not provided with a full record** since
the transcript was not transcribed until 3 years **after trial.**

5

On February 03, 1998 my trial attorney filed a MOTION TO RECUSE because we had been notified that Judge Howe had been assigned the trial of this case. That MOTION TO RECUSE contained the following reasons for asking for her recusal;

1. The judge was exposed to extrajudicial communications and publicity;
2. The judge exhibited a bias in favor of the prosecution for failing to recognize numerous violations of the Md. Rules of Professional conduct;
3. The judge was exposed to a <u>vivid and fictitious</u> portrayal a **factual events** THAT WERE IN DISPUTE by the defense which formed a basis of the case;
4. The judge made a comment on the record which exhibited her bias against the defendant.

Then, instead of allowing another judge sit in on the hearing of the recusal motion as she should have done, she denied that Motion also. That Motion clearly raised allegations that not only should the judge have recused herself from being the trier of fact, BUT in the least case she should have had a different judge sit in on that Motion as she was REQUIRED to do. My trial attorney raised the following allegations:

"Judge Howe made certain remarks and was exposed to extrajudicial communications, pretrial publicity, and information which disqualifies the judge to sit on the trial of this matter as the presiding judge..."

"In ruling on the defendant's Motion to Dismiss the information, the court <u>DISPLAYED A BIAS</u> in favor of the prosecution and against the defendant by the fact that the court took NO ACTION whatsoever against the Assistant State's Attorney of Baltimore County who clearly violated Rule 3.6 of The Rules of Professional Conduct regarding pre-trial publicity. In fact even though the prosecutor **appeared in person** on the television program "Unsolved Mysteries" and was interviewed on camera on the show, the judge wasn't even remotely critical of the prosecutor's conduct."

"It is the defendant's belief that the court's bias against the defendant overwhelmed any concerns the court may have had in regard to the misconduct of the prosecution in going forward and appearing on the television show...and **presented to the viewer** A SENSATIONALIZED VERSION OF THE FACTS IN THE INSTANT CASE."

"After hearing **direct testimony** from the Assistant State's Atty. who never denied being on the broadcast and WHO HAD NO CONCERN AS TO THE OVERALL CONTENT OF THE BROADCAST, the court dismissed the defendant's Motion to Dismiss without any criticism."

6

"The judge had been s⬛⬛ and UNDULY INFLUENCED to t⬛⬛riment of the defendant by this HIGHLY PREJUDICIAL FICTIONAL TELEVISION PORTRAYAL... The judge saw a vivid depiction of events that form the basis of this case TO INCLUDE FACTS CONTRADICTED by the victim's own statements given to the police in the instant case. THe court saw codefendant Paul Homer Shaffer in the television portrayal placing a gun to the back of Mr. Hogg's head which until the showing of this segment of Unsolved Mysteries WAS NOWHERE CONTAINED IN THE POLICE REPORT, and in fact evidence will show at trial NEVER OCCURRED."

These allegation were supported by case law such as Maryland Rule 1232 Canon 3(c) of The Md. Code of Judicial Conduct which reads in pertinent part (1) A judicial appointee should not participate in a proceeding in which the judicial appointee's impartiality might reasonably be questioned including but not limited to instances where (a) the judicial appointee has a personal bias or prejudice concerning a po½arty OR personal knowledge of disputed evidentiary facts concerning the proceeding."

There could have been NO DOUBT in the judge's mind that we were **strenuously disputing** evidentiary facts that was shown to the television viewer.

In addition, we also pointed to Surrat v P.G. County 320 Md 439 (1990) which stated in pertinent part:
> "when an allegation of bias is timely filed such judge SHALL PROCEED NO FURTHER THEREIN, but another judge SHALL BE ASSIGNED TO HEAR SUCH PROCEEDING... See also Boyd v State 321 Md 80, 521 A2d at 6-7."

None of this had any effect and rather than have another judge sit on the Motion to Recuse as she should have done, Judge Howe conducted her own hearing and Denied the Motion to Recuse.

I feel that I have amply demonstrated that my trial attorney made every effort that he could have in both of these pre-trial motions, and that he made it very clear that we were complaining of FRAUD AND MISCONDUCT **long before** the allegations contained in his Affidavit which **remained hidden** from us until Rubie's late "revelations" 14 months after trial.

These late revelations by Officer Rubie to Anello at this late date had **prevented us** from raising Rubie's concerns to the Original Trier of Fact, and also prevented us from raising them before the Court of Special Appeals since they were **unknown to the defense.**

7

I believe that the Record in this case clearly demonstrates that this petitioner has always maintained beginning with his pro-se post conviction petition that (A)ppellate (C)ounsel had (1) failed to visit with me during my appeal; (2) failed to respond to any of my letters; (3) failed to raise any of my issues that I wanted raised; and (4) that he also failed to respond to numerous phone calls from my family members regarding my appeal.

Petitioner asserts that he had been advised by Mr. Anello of his chance meeting with Officer Rubie, and that Mr. Anello had given me a rendition of what was discussed, and also that he was going to try and get Officer Rubie to come to his Office in the near future so that he could get an Affidavit from Rubie. This conversation between Anello and me took place in the first week of April 1999.

I then wrote to Mr. Greer on that same day and advised him to contact Mr. Anello for a firsthand account of what was discussed, and to Amend my Appellate Brief so that this could be brought before the Court of Special Appeals. This attempt was as fruitless as all of the others and my letter was ignored. Anello was not contacted, and there was no amendment to the Court of Special Appeals regarding anything to do with this discussion between Anello and Rubie.

Mr. Greer failed to contact Anello and investigate the contents of my letter. This could have been easily accomplished since it only involved a phone call to Anello's office. This **failure to investigate** then resulted in No Amendment that could have resulted in the Court of Special Appeals coming to a different conclusion had they known of Rubie's complaints to Anello regarding the attempt to influence his testimony, etc. They were never presented with the issues contained in Anello's Affidavit therefore they too remained in the dark. There are any number of options that they could have entertained such as (1) and attempt to obstruct justice; or (2) They could have ruled that there was Extrinsic Fraud in the case since it prevented the defense from bringing any issue contained in the affidavit, to The (O)riginal (T)rier of (F)act.

This failure to investigate not only operated to my prejudice by keeping the Court of Special Appeals **uninformed**, but it also **continues** to operate to my prejudice to this day.

In addition to his failure to investigate the above but he also failed to provide a complete record to the Court of Special Appeals by his failure to provide them with a transcript of the November, 1997 Motion to Dismiss hearing.

8

## GROUND ONE

Petitioner asserts that he was Denied his Constitutionally guaranteed right to effective assistance of counsel ON APPEAL by my Appellate Attorney's **failure to investigate** and **present evidence** to the Court of Special Appeals that Officer William Rubie complained to my trial attorney;

1. That the prosecutor had **pressured him repeatedly to change his testimony** in regard to the taking of a statement from Mr. Hogg;
2. That the prosecutor had also "suggested" to Rubie that he had been **"mistaken"** in failing to describe the alleged "handgun";
3. That the prosecutor had also "suggested" to Rubie that he had "overlooked" certain details and threats allegedly made to Mr. Hogg;
4. That the prosecutor had "coached" Mr. Hogg prior to trial and for use at trial.

### LEGAL ARGUMENT

Petitioner asserts that once I became aware of Anello's conversation with Officer Rubie, I immediately wrote to my Appellate Attorney asking him to contact Anello regarding his conversation with Rubie at the ballpark, and to amend my appellate brief to reflect the complaints Officer Rubie had made to my trial attorney.

Petitioner further asserts that it would have only taken but a **simple phone call** to Anello's office for a more accurate account of what I had explained in my letter.

This **failure to investigate** caused me to have any issues regarding that conversation between Anello and Rubie to go **un-addressed** on appeal to The Court of Special Appeals, and **prevented the court from being fully informed** about what I believe to be **substantial issues and or mitigating evidence** for them to consider on Appeal.

I believe that this can be adequately equated with the most recent Supreme Court Case of Williams v Taylor 146 L. Ed.2d 389, 120 S.Ct. 1495 applies to the instant case. In that case, Justice Stevens held that Williams was Denied his constitutionally guaranteed right to effective assistance of counsel **when his attorneys** "failed to investigate and present substantial mitigating evidence during the sentencing phase of a capital murder trial..."

9

Justice Stevens also went on to say that:

> "to establish ineffectiveness, a defendant must show that counsel's representation fell below an objective standard of reasonableness, and to establish prejudice he must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. U.S.C.A. Const. Amend. 6."

I believe that I can also demonstrate to this court that if he had presented these matters to the Court of Special Appeals that there was the likelihood that they could have found any number of reasons to grant a new trial, and reverse the decision of the lower court.

One such example was that they could have ruled that these late allegations by Officer Rubie to my trial attorney had prevented us from raising the matter before the Original Trier of Fact, as defined in Extrinsic Fraud. There is NO WAY that anyone can tell what they COULD HAVE DONE. It is reasonable to assume that THIS OMITTED EVIDENCE might have influenced the Court of Special Appeals to rule in favor of this defendant.

It is also reasonable to assume that the Court COULD HAVE ALSO ruled in favor of the defense on the basis of THE APPEARANCE OF IMPROPRIETY that the Affidavit in regards to prosecutorial misconduct which we had always complained of in pre-trial motions.

Justice Stevens had also pointed out further relevance to the instant case and stated:
> "counsel's error prejudiced the defendant since the omitted evidence MIGHT HAVE INFLUENCED the jury's appraisal of defendant's moral culpability U.S.C.A. Const. Amend 6; U.S.C.A. Section 2254(d)(1)."

Therefore, I believe that I have amply demonstrated that I was Denied my constitutionally guaranteed right to effective assistance of Counsel on Appeal by;
1. His failure to investigate and present substantial appellate issues to the Court of Special Appeals;
2. That this Omitted Evidence could have influenced the Court of Special Appeals in favor of the defendant;
3. That this representation fell below the objective standard of reasonableness and caused me prejudice during the Appeals stage by not informing the Court of Special Appeals about Rubie's voluntary concerns and complaints about the prosecutor to my trial attorney 14 months after the trial.

Petitioner asserts that he was Denied his Constitutionally guaranteed right to effective assistance of counsel <u>On Appeal</u> by the failure of my Appellate Attorney to provide the Court of Special Appeals with a **full record**; and that he also failed to provide them with a **full briefing** during the course of my direct appeal regarding a Motions Hearing on November 1997.

## LEGAL ARGUMENT

Petitioner asserts that he is relying heavily on a most recent case that was decided in the District Court of Maryland by The Honorable J. Messitte. See <u>Rubin v Gee, et al</u> 128 F. Supp. 2d. 848, (2001). In his written opinion Judge Messitte had elaborated on the following quote which I rely on in pertinent part in regards to a **missing transcript** and the fact that the court had ruled without the benefit of a **full briefing**.

> "...The State of Maryland then filed an application for leave to appeal to the Court of Special Appeals. On November 6, 1997, **without the benefit of a transcript** of the post conviction hearing which the state had not ordered and apparently without the benefit of a **full briefing**..."

I think that the facts of the instant case are nearly identical. In the above case, his Honor refers to the states failure to **order a transcript** of the post conviction hearing. In the instant case, I HAVE ALWAYS COMPLAINED OF my appellate counsel to **order a transcript** of a Motion to Dismiss hearing that took place in November of 1997. I wrote both my appellate counsel, and also the Appellate Division of the Public Defender and was ignored. I wrote to appellate counsel and told him that I felt that the **missing transcript** was vital to my appeal because of several reasons. One was that it contained the direct testimony of Mr. Norman who was the prosecutor assigned to the case. In his testimony, **he admitted** that HE WAS THE ONE who had said that there was a "gun" pointed at Mr. Hogg's head in the FICTITIOUS HOLLYWOOD REENACTMENT which we had objected to, and was in fact part of the reason for filing the Motion to Dismiss. This admission by Mr. Norman was **never alleged** in the original statement of charges by the police. It was never alleged by Mr. Hogg in his report to the police, and it was never alleged by Mr. Norman in his filing of the information. In fact it was **never alleged** until it came time for some **hired actor** who was given a **fictitious script** and performed it for the benefit of the National Television audience. The **hired actor** was given a 9mm handgun and was told to have the actor point it at Mr. Hogg's head which he did for the benefit of the television audience and to the **prejudice of this defendant** to any **potential juror** who may have seen it.

Petitioner points to Page 13 footnote 3, of Judge Davis' unreported opinion of The Court of Special Appeals regarding the instant case. Judge Davis made a comment regarding the transcript by saying:

> "The transcript of this Motions hearing was not included in the record on appeal."

On page 14 at footnote 4, Judge Davis made this additional comment:

> "He has not provided us with a transcript of that hearing and has not set out the comment in his brief."

The reason why <u>appellate counsel</u> could not provide the comment is that he failed to get it transcribed, failed to heed my letters to get it transcribed. In fact it was not transcribed until January 2001 more than 3 full years after denial of my appeal by the court of special appeals.

In Judge Cadigan's written memorandum of the post conviction hearing that finally took place in February 2001 and was not decided until one year later on February 03, 2002, he commented and admitted:

> "Mr. Greer failed to obtain a copy of the <u>Motions transcript</u> from November 24, 1997 at the time of appeal."

In the <u>Rubin</u> case, Judge Messitte also pointed out what I believe it relevant to the instant case the following statement:

> "The Court of Special Appeals from all appearances reached a hasty judgment in this case. In it's first opinion without a full record and with less than a full briefing... The second opinion however did little to ameliorate the shortcomings of the first. Objectively unreasonable errors of constitutional dimension remained. Those errors in the court's view fully justify granting the relief Rubin seeks..."

Petitioner avers most strenuously that it was Appellate Counsel's failure to provide the Court of Special Appeals with a **full record** and that he also failed to provide them with a **full briefing** of anything at all regarding that Motions hearing which was the subject of pre-trial allegations of prosecutorial misconduct, and violations of the Professional Rules, and allegations of Fraud. NONE OF WHICH were ever raised on Appeal to the Court by Mr. Greer.

Judge Davis and the panel MAY HAVE made a different determination had they been presented with these additional facts by giving them a full record, and giving them a full briefing of Norman's testimony when he2took the stand.

It is my belief from all of the many cases that I have read regarding ineffective assistance of counsel and the comparison to the Strickland test, that any Appellate Attorney would try and argue that he rendered effective assistance of counsel by failing to have a full record. There is just NO WAY for any Appellate Attorney to evaluate whether or not there are issues that could have merit without having the complete record before making any determination. Anyone who does attempt to do so is simply making an excuse rather than making a sound legal decision that is based on the facts in the record.

I would have much rather had a panel of experienced Appellate Judges make a determination in my case regarding these issues rather than accept Mr. Greer's self serving "evaluation".

Furthermore, I would also much rather have had a panel of experienced Appellate Judges make the determination rather than Mr. Greer that the conversation between Officer Rubie and my trial attorney did not at least indicate The Appearance Of Impropriety.

The Appellate courts are not mind readers, and they can only rule on matters and issues that are raised on Appeal. If appellate counsel fails to raise the issues it is the defendant that is made to suffer the prejudice of his failures and then experience even further prejudice in demonstrating that Appellate Counsel was ineffective.

Therefore, I respectfully believe that I have demonstrated that the matters contained in this Petition for a Writ of Habeas Corpus are Constitutionally Meritorious that I am entitled to have a speedy hearing on the merits.

WHEREFORE the Petitioner Prays:
A. That the Judgment be overturned and remanded for a New Trial; Or,
B. That the petitioner be granted an immediate hearing and that both Mr. Anello and Officer Rubie be compelled to testify;
C. And for such other and further relief that this Honorable Court may deem just and proper.

Salvatore Spinnato, 272-280
13800 McMullen Hwy.
Cumberland, Md. 21502

January 27, 2003

CERTIFICATE OF SERVICE

I hereby certify that I have an Original Copy of a Motion for a Writ of Habeas Corpus and a request for an Immediate Hearing for The Clerk of Court, and also enclosed one additional copy to be distributed to the States Attorney Office for Baltimore County.

*[signature]*
Salvatore Spinnato 272-280
13800 McMullen Hwy.
Cumberland, Md. 21502
January 27, 2003

FORMA PAUPERIS

I hereby certify that and declare that I am the petitioner in the above titled case and hereby request waiver of any and all fee's, and that I have previously been given pauperis status in Baltimore County.

*[signature]*
Salvatore Spinnato, 272-280
January 27, 2003