IN GROUND ONE OF MY HABEAS PETITION I ALLEGED

That I was Denied Due Process of Law, and the right to a fair trial based on my trial attorney's **affidavit** that the arresting officer had alleged to him **14 months after my trial** the prosecutor **attempted to influence** his testimony **prior to trial** and for use at trial.

**That Affidavit** raised **four allegations** of prosecutorial misconduct which occurred **prior to trial**. The **basis** of these allegations came from **Officer Rubie** who was the investigating officer, and **voluntarily** approached my trial attorney at a ballgame in Camden yards in April 1999 which was **14 months after my trial had concluded**. This information was **unknown** to the defense, and **prevented** us from raising any of these allegations by Officer Rubie to Judge Howe who was the **Original trier of Fact** since Officer Rubie **withheld this information** from the defense until April 1999. Officer Rubie had **12 years experience** when he made these complaints to my trial attorney.

The postconvicition court (Judge Cadian) responded in error by saying at pages 15 and 16 of his Memorandum/Opinion:
   "The petitioner failed to raise this issue on appeal therefore it may be deemed to have been waived. The petitioner asserts however the issue has not been waived because appellate counsel was ineffective for failing to raise this issue on appeal. The court will address the merits of the clam of appellate counsel's ineffectiveness later in this opinion..."

At pages 17 and 18, Judge Cadian went on to say in his Memorandum/Opinion:
   "The only evidence offered is Mr. **Anello's recollection** of Officer Rubie's **statements**... Even if Mr. **Anello's recollection** of the exchange between himself and Officer Rubie at Camden yards is accurate, **the statements do not establish** that Mr. Norman **violated any** of the Rules of Professional Conduct... The petitioner has put forth **no evidence** that Mr. Norman committed prosecutorial misconduct **or violated any** of the Maryland Rules of Professional Conduct."

GROUND 1 PAGE 1     **SCANNED**

My trial attorney testified at **page 31** of the postcon transcript:

"I have handled somewhere between 1000 to maybe 1300 criminal matters as a general practitioner of 25 years and **I have never** in those 25½ years had a police officer of any jurisdiction come up to me **14 months or so after a case** and tell me my client had a raw deal. **It was quite memorable**. And before I wrote you, **I discussed it with a couple of Judges**, and a couple of lawyers, who are friends of mine, and the consensus was that I had to follow up and try to talk with him in a more conservative environment other than opening day of Oriole baseball and find out if it was a serious statement that he made to me and if it was, **I then had a duty** to tell you or your new attorney." **SEE EXHIBIT 1**

Anello was questioned about his **recollection** of the events by the Asst. State's Atty. and was asked if his photographic memory was **"out of focus"**. Anello responded by saying **at page 49**:

"All due respect Mr. Roscher this never happened to me before. **Nothing was out of focus**. I am actually sorry the Officer even talked to me. It's not something you expect on opening day at Oriole Park something that never happened to me in 25 years. **You remember something like that"**. **SEE EXHIBIT 2**

I also feel that Judge Cadigan's remarks at pages 17 and 18 are in error. Judge Cadigan stated:

"Even if Anello's **recollection** of the exchange between himself and Officer Rubie's **statements** at Camden Yards is **accurate** the **statements do not establish** that Mr. Norman **violated any** of the Rules of Professional Conduct..."

I believe Judge Cadigan to be in error again. To suggest that the **statements** by Officer Rubie to my trial attorney **do not violate any** of the Rules of Professional Conduct is in **error** and violates every principle of **Due Process** and Fair Trial under the U.S. Constitution. **No Federal Prosecutor** would ever be **excused** for making any of these same statements in a **Federal Court**.

GROUND 1 PAGE 2

Mr. Roscher cross examined Rubie regarding the **Affidavit**:

<u>ROSCHER SAID</u>: "There's a statement in the affidavit that says you said, "Look if Sal had been convicted of the handgun charges I **probably would cooperate** with you however, since he wasn't convicted of the handgun violation I really don't see **how any harm was done** by Mr. Norman. **"Do you recall saying that"** SEE EXHIBIT-3

<u>RUBIE RESPONDED</u> "I don't recall saying those words. I believe it might have been more in the line of saying, **"hey what's the point he didn't get convicted of the handgun violation"** responding to his thoughts on it. SEE EXHIBIT-3

Officer Rubie's assessment of **"what's the point"** and **"I don't see how any harm was done"** is in error. He fails to understand that the **Prosecutorial misconduct** begins with **the attempt to influence his testimony**. It is not dependent on whether or not I was convicted of the **fictitious gun** that was portrayed on National T.V. by one of the **"hired actors"**. The affidavit by my trial attorney had claimed that Officer Rubie had alleged that the prosecutor **attempted to influence his testimony**.

Rubie's postconviction testimony also agree's not only with Anello's affidavit but also with Anello's **testimony at page 41** when Anello said: SEE EXHIBIT-4
   "He basically indicated to me that **because** you were found not guilty in regard to the handgun charges, **that basically no blood no foul**, that you know **there was no harm done** in that **he never altered his testimony** on the handgun **at the urging of Mr. Norman**...I tried to communicate to him that the mandatory portion of use of a handgun used in a felony **changed the trial tactics** and everything. If he knew that was true it should have been dismissed. It would have **changed our election of a judge or jury trial.** And he basically said to me at that point that **he would have felt differently if you were convicted and would cooperate** but in that you were not convicted of the handgun, **he could not see how you were harmed.** SEE EXHIBIT-4

GROUND 1 PAGE 3

I am asking the District Court to recognize that **BOTH** the postcon court, and the Attorney General have <u>failed to recognize</u> that it is <u>uncontested</u> that this <u>information was withheld</u> from the defense until **April 1999**. This was confirmed by Officer Rubie and Anello at the postcon hearing, and <u>remains unchallenged</u> by the Attorney General's Office. The memorandum/opinion of Judge Cadigan failed to recognize that we were **prevented** from raising any of this with Judge Howe who was the **trier of fact**. Therefore, the **allegations** by Officer Rubie to my trial attorney are **EXTRINSIC** to the **RECORD** since the trial court was unaware of these allegations as well.

**BOTH** the postcon court and the attorney general have <u>failed to address</u> that in my original habeas petition to this Court I cited **U.S. Supreme Court** case law, and precedent which I believe entitles me to the relief I prayed for. That case is Throckmorton v U.S., U.S. Cal, **(1878)** which deals with matters that are **Extrinsic to the record**. Throckmorton established that a **New Hearing or Trial** is warranted if one of the parties **was prevented** from presenting their case to the Original **trier of fact** who was Judge Howe. Throckmorton **does not require** for me to prove that Anello's testimony is more worthy of belief than Rubie, but I point out that Anello is an Officer of the Court and has been for the past 25 years years with an **unblemished record**. What Throckmorton **requires** is that I must show that were were **PREVENTED** from raising any of the issues raised by Anello in his Affidavit to Judge Howe who was the **original trier of fact**.

Throckmorton is <u>clearly established federal law</u> which deals with matters which are **Extrinsic** to the record which the postcon court had failed to recognize and failed to address. The purpose of **Anello's Affidavit** as an Officer of the Court was to let the Court know that the allegations by Rubie were **unknown** to us, and could not have been raised **prior to trial** since Officer Rubie **withheld** this information from the defense until 14 months after trial had concluded.

There is further case law dealing with matters that are **Extrinsic** to the record. See <u>Tandra S. v. Tyrone W.</u> 336 Md. 303, 638 A2d 439 (1994). That Court held in part:

"In determining whether or not extrinsic fraud exists, the question is **not** whether the fraud operated to **cause the trier of fact** to reach an unjust conclusion, but whether the fraud **prevented the actual dispute** from being presented to the fact finder at all."

In the instant case, the **fact finder** was Judge Howe, and since the allegations by Rubie to Anello took place **prior to trial**, no one can predict what Judge Howe would have done since we were **prevented** from raising it since it was **withheld** from us until 14 months after the trial had concluded.

I am also asking for this Court to recognize there is **NO DISPUTE** that there were **three** post trial conversations between Rubie and Anello. The postcon court only discussed the **first meeting** that took place at the ballpark. The second conversation was by phone when **Rubie had agreed** to meet Anello at his Office to continue their initial conversation regarding possible misconduct by the Prosecutor. Rubie acknowledged this at the postconviction when I questioned Officer Rubie. SEE EXHIBIT-5

"I just wanted to clarify one thing. When you first had the meeting with Anello at the ballgame, it was **about three weeks later** he called you on the phone according to his affidavit, and at that time you still **had agreed** to come down, **you didn't have any reservations at that time**. That's what the affidavit says and that's what **you also agreed to** is that correct. SEE EXHIBIT-5

Rubie responded by saying **YES**. This then led to the third and **final conversation** when Rubie called Anello **one hour** before the scheduled meeting, and told Anello that he was going to cancel the meeting based on the **advice of an attorney** friend of his.

The postcon court failed to acknowled that when Rubie agree to meet that he did so **without any reservations or hesitation's** of any kind as Rubie himself admitted to on EXHIBIT-5.

GROUND 1 PAGE 5

At the risk of repeating myself I would like to say that Mr. Anello was so concerned as an **Officer of the Court** that he had spoke with several Judges and Lawyers for their opinion **prior to the affidavit** and **testified**. SEE EXHIBIT-1

"I have handled somewhere between 1000 to 1300 criminal matters as a general practitioner of 25½ years and **I have never** in those 25½ years had a **police officer** of any jurisdiction come to me **14 months** or so after a case and tell me **my client had a raw deal** it was quite memorable. And I before I wrote you, I had discussed it with a **couple of judges, and a couple of lawyers** who are friends of mine, and the consensus was that I had to follow up in a more conservative environment other than opening day of Oriole baseball, and find out if it was a **serious statement** that he made to me, and if it was I then **had a duty** to tell you or your new attorney."

I also ask the court to also look once more at EXHIBIT-2 when Mr. Roscher **challenged** Anello's **memory** of the initial conversation at the ballpark, and Anello testified by saying: SEE EXHIBIT-2

"All due respect Mr. Roscher **this had never happened to me before**. Nothing was out of focus. I am actually sorry the Officer even talked to me. It's not something you expect on opening day at Oriole park, **something never happened to me in 25 years you remember something like that**.

Back in **March 2004** I submitted a **series of exhibits**. Those exhibits were copies of correspondence that I **received or sent** from the time of my direct appeal beginning in March 1998 to May 1999. Among those were two letters marked **Exhibits 44 and 45** which were addressed to Mr. Greer who was my **appointed appellate counsel**. Both letters discussed Anello's **post trial** conversation with Officer Rubie at the ballpark. The court can see that I asked for Mr. Greer to **call Anello's office** for a more complete account of the conversation, and **to amend my appeal** so that the appellate court would be made aware of the allegations made by Rubie to my trial attorney **concerning the prosecutor**.

GROUND 1 PAGE 6

In ending my argument in Ground One I would also like for the District Court to make a determination if the **Affidavit** by Mr. Anello, and the **Testimony** by both Anello and Rubie at the postconviction hearing would amount to what is called a **Brady Violation** as was determined by the Supreme Court of the United States in Brady v. Maryland. I don't have the cite number but I would like to know the opinion of this court's opinion. I am throwing this out for the Court to consider since the Affidavit of my trial attorney establishes that Officer Rubie did not divulge this information until April 1999 which was 14 months **after trial concluded**, and that this information was about **pretrial conversations** between Rubie and the prosecutor. In addition I believe that the testimony by both Rubie and Anello does in fact establish that **this information was withheld** from us until long after trial ended. In fact Rubie did not deny that the prosecutor **attempted to influence** Rubie's testimony. His only reasoning in not cooperating with Anello is shown by examining EXHIBIT-3: Rubie testified that his reason for not cooperating with Anello was because in his mind I had not been convicted of the "handgun" violation.

**ROSCHER SAID** "There's a statement in the affidavit that says that you said, Look, if Sal had been convicted on the handgun charges, **I probably would cooperate with you**. However, since he wasn't convicted of the handgun charges, I really don't see how any harm was done by Mr. Norman. **Do you recall saying that.**"

RUBIE RESPONDED: "I don't recall saying those words. I believe it might have been more in the lines of saying, **"hey what's the point** he didn't get convicted of the handgun violation, responding to his thoughts on it."

Therefore I believe from a layman's perspective that **Officer Rubie's testimony** under oath agrees with **Anello's affidavit and testimony** at the postconviction hearing. SEE EXHIBIT-4 and that this establishes a violation under Brady v. Maryland which has been a clearly established Federal law by the Supreme Court of these United States.

In my **ORIGINAL** habeas petition to this District Court one of my arguments appeared on **PAGE 5** and discussed another U.S.S.Ct. decision in Geders v. U.S., 96 S.Ct. 1330, (1976) which I believe is directly on point with Officer Rubie's **testimony** that is contained in **EXHIBIT-3**. The Geders court held the following:

"An attorney must respect the important ethical distinction between discussing testimony and **improperly seeking to influence it**. Any violations of the strictures of the **ABA Code** of Professional responsibility against **fraudulent conduct** or use of fraudulent or perjured testimony constitutes a most serious breach of the **attorneys duty to the court** to be treated accordingly..."

Anello's affidavit stated that Rubie complained to him that Norman **attempted to influence** his testimony, and **EXHIBIT-3** which is Rubie's **testimony** shows that is what Norman **attempted to do**. Rubie failed to see that because he put the emphasis on that I was not convicted of the handgun charges.

The Geders court discussed what action should be taken by saying:
"The law and the disciplinary rules **prohibit** the use of **fraudulent**, false, or perjured testimony **or evidence**. A lawyer who **participates** in the **introduction** of such **testimony or evidence** is subject to discipline. Disciplinary Rule 7-102 (A)(7)(8) of the code provides and is relevant to my own case:
(A) A lawyer **shall not participate** in the **creation** or preservation of evidence which he knows or it is obvious that the evidence is false."

Mr. Norman's **participation** in the video should suffice since it was a **fraudulent portrayal**. This was raised by Anello to Judge Howe in him **MOTION** to Dismiss, and at the **HEARING**, and was raise by me to Judge Cadigan as well as **TWO** pro se applications for leave to appeal which were denied without comment.

Disciplinary Rule 7-102(A)(7) holds that:

"A lawyer **shall not** counsel or assist in conduct that the lawyer knows to be illegal or fraudulent."

Anello's Affidavit concerning the **"coaching"** of Mr. Hogg's testimony by Mr. Norman should suffice as a violation of DR 7-102.

Disciplinary Rule 7-102(A)(8) holds that:

"A lawyer **shall not knowingly** engage in conduct **contrary** to the Disciplinary Rules. **Any violations** of these strictures constitute a **most serious breach** of the attorneys duty to the court to be treated accordingly."

Mr. Norman has been a prosecutor for many years, and knows that he **should not have attempted to influence** Officer Rubie's testimony. **EXHIBIT-3** shows what Officer Rubie had testified to at the postconviction hearing before Judge Cadigan way back on February 01, 2001, and Judge Cadigan failed to include that in his Memorandum/opinion.

I also would like to **STRESS** that my appellate lawyer (Mr. Greer) should have but **failed to raise** this on Direct Appeal. I submit that I previously submitted **EXHIBITS 44 and 45** to this Court. These **EXHIBITS** were part of 51 separate exhibits which I submitted to the Court back on April 13, 2004, and are listed as **PAPER NO. 41** on the Federal Docket Sheet.

Exhibit-44 was a letter to Mr. Greer dated April 07, 1999 and informed Mr. Greer to **Call Anello's Office** to get a firsthand report of what was said since I could not remember everything Anello told me on the phone.

EXHIBIT-45 was a letter to Mr. Greer dated April 15, 1999. In that letter I had asked for Mr. Greer to **"Amend my appeal"** so that the Court of Special Appeals is aware of what was discussed between Anello and Rubie. Mr. Greer only needed to make a **simple phone call** to Anello's Office. Not only did he fail to call but he also failed to amend my appeal which left me no choice but to raise it pro se at my postconviction.

GROUND 1 PAGE 9

My final reasoning as to why I should be granted relief in GROUND ONE is that I believe there was a **Brady violation**. Since I am without any legal training, I will ask the District Court to consider BOTH the **Affidavit** of my trial attorney, and **testimony** from Mr. Anello, and Officer Rubie. I am asking this court to examine **EXHIBITS 3 and 4**. From what I have been able to learn from case law is that a Brady Violation must have **three prongs**.
**FIRST** the defendant must show that the evidence was **suppressed**.
**SECOND** the evidence suppressed must be **exculpatory or favorable** to the defense.
**THIRD** the evidence must be material to the case.

**(FIRST)** I believe that **EXHIBITS 3 and 4** demonstrate that it is uncontested that Rubie admitted that there was a pretrial conversation that was initiated by the prosecutor which involved an **attempt to influence** Rubie's testimony regarding a "handgun", and Rubie decided that **no harm** had occurred because I was **not convicted** of the "handgun" charges.

**(SECOND)** This information did not become known until Rubie had volunteered this information to my trial attorney **14 months after trial**. Therefore, this information was **withheld** from the defense. This information was not able to be brought to the attention of the trial court, and is **favorable** to the defense because it demonstrates **prosecutorial misconduct**, and violations of Md. Rules of Professional conduct 3.4(b) A Lawyer **shall not** counsel a witness to testify falsely... Rule 3.8(a) Special Responsibilities of a Prosecutor; and Md. Rule 8.4 (a)(c)(d)(e) Misconduct.

**(THIRD)** The Affidavit and testimony at the postconviction hearing contained in **EXHIBITS 3 and 4** are material to the case and if known **prior to this** would have necessitated in us presenting this information which was **withheld** which meant that there was no way that the defense could have known about this until Rubie's complaints to Anello at **ORIOLE BALLPARK** on April 1999.

GROUND 1 PAGE 10

**THEREFORE** this pro se petitioner is asking this Court to grant me the relief that I prayed for in my Habeas Petition regarding **GROUND ONE** for **ANY ONE** of the following reasons:

1. I believe that the **affidavit** and **testimony** by Anello and Rubie demonstrate that there was a **Brady violation** that the defense was not aware of during the pretrial stages, and at a minimum should be awarded a new trial or dismissal for **prosecutorial misconduct**.

2. I believe that Officer Rubie's testimony of **"what's the point"**, and **"I don't see how any harm was done**" by Mr. Norman is in error because he fails to understand that the **HARM** lies in the **attempt to influence his testimony**, and is **not dependent** on whether or not I was convicted of the **fictitious handgun** that was shown to a National Television audience by the **hired actor** who **disturbed the facts** of the case. Officer Rubie fails to understand that there is U.S.S.Ct. case law that which recognizes that it is **the attempt to influence testimony** which determines **prosecutorial misconduct**. See Geders v. U.S., 96 S.Ct. 1330, (1976) which discusses **an attempt to influence testimony**.

3. I believe that Judge Cadigan failed to recognize that Officer Rubie **acknowledged** that he erroneously based his **willingness to cooperate** with Anello **ONLY IF** I was convicted of the "handgun" portrayed by the **hired actor**.

4. I also assert that the postconviction court, the State's Attorney Office for Baltimore County, Officer Rubie, and the Attorney General's Office **ALL FAIL TO RECOGNIZE** that the **allegations** by Officer Rubie to my trial attorney **were withheld** from the defense and **PREVENTED** us from bringing any of Rubie's allegations to the **trier of fact** since they were not known until 14 months after trial had concluded. See Throckmorton v. U.S., U.S. Cal (1878). These failures and errors are an unreasonable application of clearly established Federal Law as determined by the Supreme Court of the United States.

5. I also believe that the postconviction court, and the Attorney General **fail to recognize** that I was **totally dependent** upon Appellate Counsel since I have **no legal training**, and a limited GED Education. I believe that counsel's **failure to investigate** had affected and **prejudiced** my direct appeal because this **OMITTED EVIDENCE** could have influenced the Appellate Court to send the matter back to Judge Howe who was the **trier of fact**. These matters were **extrinsic to the record** and no one can tell how Judge Howe would have ruled if given the opportunity to do so. This opportunity **was removed** since this information **was withheld** until Officer Rubie's conversation with my trial attorney at Oriole Park in April 1999. I believe that the postconviction court failed to apply clearly established Federal Law as determined by the S.Ct. in Williams v. Taylor, 120 S.Ct. 1495, (2000). The only thing Counsel had to do was to make a simple phone call to Anello's Office and speak with Anello and then to **Amend the Appeal** since the appellate court had not yet ruled.

6. I also believe that these **errors and omissions** by Appellate Counsel demonstrate that counsel was **ineffective on appeal** as I was entitled to under Evitts v. Lucey, 105 S.Ct. 830 (1985). That court held that the right to effective assistance of **counsel on appeal** is guaranteed by the Due Process Clause of the **XIV Amendment**.

7. I further assert that I was denied effective assistance of counsel on Appeal as determined by Strickland v. U.S. 104 S.Ct. 2052, (1984). I must remind the court that during the entire time of my direct appeal, Counsel had (1) Failed to visit with me to discuss my appeal. (2) Counsel failed to speak with me by phone. (3) Counsel failed to raise a single issue contained in any of my 10 letters addressed to counsel at his home/office in Bel Air Maryland. I believe that the Constitution of the United States would at least **REQUIRE** Appellate Counsel to at least visit me or speak with me by phone.

8. Lastly I believe that I have demonstrated in **GROUND ONE** that the **testimony** by my trial attorney and Officer Rubie at the postconviction hearing demonstrates that the prosecutor had **violated** several Rules of Professional Conduct, and Denied me Due Process of Law as guaranteed to me by the **XIV Amendment** due to the Prosecutor's **attempt** to influence the testimony of Officer Rubie.

I further allege that each Mr. Rule of Professional Conduct violated has a **corresponding disciplinary rule**.

Those Md. Rules of Professional Conduct which I believe were **violated** by the prosecutor were as follows:

1. Md. Rule 3.4(a) which states that "A lawyer **SHALL NOT** counsel or assist a witness to testify falsely..." I believe that Rubie's testimony in **EXHIBIT-3** acknowledges that the prosecutor **had attempted to influence** his testimony.

2. I also believe that **EXHIBITS 1, 2, and 4** which are the **transcript testimony** of my Trial Attorney who has been a member of the Maryland Bar and Officer of the court for more than 25 years also indicates prosecutorial misconduct.

Md. Rule 8.4 **MISCONDUCT**:
It is professional misconduct for a lawyer to:
(a) Violate or **attempt to violate** the rules of professional conduct...
(c) engage in conduct involving **dishonesty** fraud or deceit or **misrepresentation**;
(d) engage in conduct that is **prejudicial** to the administration of justice."

I believe that Officer Rubie's **testimony** regarding his willingness to testify **only if** I had been convicted of the "gun" charges shows **MISCONDUCT** and violations of subsections (a)(c) and (d) of Md. Rule 8.4 .

I end my "legal" argument regarding GROUND ONE by stating that Judge Cadigan, the postcon,,+tion judge **was in error** and failed to recognize long established Federal Law regarding the Due Process Clause of the XIV Amendment when he stated at **pages 17 and 18** of his memorandum/opinion the following statement:

"The only evidence offered is **Mr. Anello's recollection** of Officer Rubie's **statements**... Even if **Mr. Anello's recollection** of the exchange between himself and Officer Rubie at Camden yards is accurate, **the statements do not establish** that Mr. Norman **violated any** of the Rules of Professional Conduct... The petitioner has put forth **no evidence** that Mr. Norman committed prosecutorial misconduct **or violated any** of the Maryland Rules of Professional Conduct..."

**THEREFORE** I believe that I have demonstrated that I was Denied Due Process of Law, and the right to a Fair Trial based on my trial attorney's **affidavit** that the arresting officer had alleged to him **14 months after my trial** the prosecutor **attempted to influence** his testimony **prior to trial** and for use at trial.

This concludes my argument regarding GROUND ONE.

```
 1  it was the best of your ability in the attached affidavit
 2  that you could recall the events of meeting with Officer
 3  Rubie in a ball game, is that correct?
 4       A.   Correct.
 5       Q.   How long have you been a member of Maryland Bar?
 6       A.   Twenty-five and a half years.
 7       Q.   Have you ever put forth any such affidavit to any
 8  court since you have been practicing law of this nature?
 9       A.   No.
10       Q.   Mr. Anello, you have known me for ten years;
11  why did you feel it necessary to provide me with this
12  affidavit?
13       A.   I have handled somewhere between one thousand to
14  maybe 1300 criminal matters as a general practitioner over
15  25 years and I have never in those 25 and a half years had
16  a police officer of any jurisdiction come up to me 14
17  months or so after a case and tell me that my client had
18  a raw deal.  It was quite memorable.  And I, before I wrote
19  you, I discussed it with a couple of judges, a couple of
20  lawyers, who are friends of mine, and the consensus was
21  that I had to follow up and try to talk to him in a more
22  conservative environment other than opening day of Oriole
23  baseball and find out if it was a serious statement that he
24  made to me and if it was, I then had a duty to tell you or
25  your new attorney.
```

EXHIBIT 1

```
 1        Q.   When was it that you actually put down in writing
 2   this conversation?
 3        A.   I never put it down in writing.
 4        Q.   Well?
 5        A.   Oh, you mean --
 6        Q.   Ten months after the conversation, it gets
 7   transcribed?
 8        A.   I dictated it into a dictaphone.
 9        Q.   But until that time, it was just a matter that
10   you trusted your memory as to the quotes and things that
11   are in this affidavit?
12        A.   Yes, sir, I have a photographic memory, same way
13   I studied for the Bar exam.
14        Q.   Is it possible that photograph was a little out
15   of focus by the time you did this?
16        A.   All due respect, Mr. Roscher, this had never
17   happened to me before.  Nothing was out of focus.  I am
18   actually sorry the officer even talked to me.  It's not
19   something you expect at opening day at Oriole Park,
20   something that never happened to me in 25 years.  You
21   remember something like that.
22        Q.   You discussed with Mr. Spinnato whether or not
23   to elect a Jury trial; is that correct?
24        A.   Yes.
25        Q.   And in the end?
```

```
 1  talked about, that's when we talked about the, what a good
 2  guy he really is, if he would have gone straight and he
 3  was a very nice guy and that he felt as though Sal was
 4  wrong in the amount of time that he got and he thought
 5  that Mickey was overzealous in the case.
 6       Q.   Okay.  Did he appear to be upset about the
 7  convictions themselves or the resulting sentence?
 8       A.   I think it was the more the sentencing, the time.
 9            MR. ROSCHER:  Court's indulgence one moment,
10  please.
11                 (There was a pause in the proceedings.)
12            BY MR. ROSCHER:
13       Q.   There's a statement in the affidavit that says
14  that you said, Look, if Sal had been convicted on the
15  handgun charges, I probably would cooperate with you and
16  feel a lot different with you.  However, since he wasn't
17  convicted of the handgun charges, I really don't see how any
18  harm was done by Mr. Norman.  Do you recall saying that?
19       A.   I don't recall saying those words.  I believe it
20  might have been more in the lines of saying, hey, what's
21  the point, he didn't get convicted of the handgun violation,
22  responding to his thoughts on it.
23            MR. ROSCHER:  Nothing further, Your Honor.
24            THE COURT:  Anything further of the officer,
25  Mr. Spinnato?
```

EXHIBIT 3

*Circuit Court for Baltimore County*
*February 1, 2001*

Salvatore Spinnato vs.
Warden, Division of Corrections
Case Numbers 96-CR-3299 & 96-CR-4281

```
 1       A.   Yes, the night of the appointment, he called me
 2   approximately an hour before he was supposed to arrive as a
 3   courtesy and told me he was not going to come.  I was very
 4   upset about that and I asked him why.  And he indicated to
 5   me that he had talked with others and I assumed he meant
 6   superiors, but it could have been a lawyer, I don't know,
 7   but he had talked to others and they advised him he should
 8   not come with me at that point.
 9            And then I, we, but he did then proceed to talk
10   to me some more by telephone.  He basically indicated to
11   me that because you were found not guilty in regard to the
12   handgun charges, that basically no blood, no foul, that,
13   you know, there was no harm done in that he had never
14   really altered his testimony on the handgun at the urging
15   of Mr. Norman and you were not found guilty of it.
16            I tried to communicate to him that that mandatory
17   portion of use of the handgun use of a felony changed the
18   trial tactics and everything else.  If everybody knew that
19   was not true, it should have been dismissed, it would have
20   changed our election of Judge or Jury trial.
21            And he basically said, at that point he said to
22   me that he would have felt differently if you were convicted
23   and he would cooperate.  But in that you were not convicted
24   of the handgun, he could not see how you were harmed.  He
25   also said he thought in discussing with others that he was
```

EXHIBIT 4

Circuit Court for Baltimore County
February 1, 2001

```
 1                     REDIRECT EXAMINATION
 2          BY MR. SPINNATO:
 3       Q.   I just wanted to clarify one thing.  When you had
 4  the meeting with Mr. Anello initially at the ball game, it
 5  was about three weeks later he called you on the phone
 6  approximately, according to his affidavit, and at that time
 7  you still had agreed to come down, you didn't have any
 8  reservations at that time; that's what the affidavit says
 9  and that's what you also agreed to, is that correct?
10       A.   Yes.
11       Q.   But then a week later, the meeting was cancelled
12  one hour before?
13       A.   Correct.
14       Q.   You called to cancel it.  Okay.  As far as --
15  Your Honor, I am sorry, I don't want you to yell, but
16  I wanted to ask him one more thing about the Unsolved
17  Mysteries program, about the difference he saw and did
18  you say I could or could not do that?
19            THE COURT:  Go ahead.
20            BY MR. SPINNATO:
21       Q.   When you saw that there was a handgun pointed to
22  his head, didn't you say, that's not what was reported?
23  Did you think something was different?
24       A.   I am going to be honest, I don't remember the
25  episode as much.  I can't go back and recall.  I don't
```

EXHIBIT 5

Circuit Court for Baltimore County
February 1, 2001