IN GROUND TWO OF MY HABEAS PETITION I ALLEGED

THAT: My **right** to be tried by a jury was not the product of a knowing and intelligent choice, and **my waiver was predicated** on (1) **FEAR** that the trial Judge would show the **videotape** to a Jury; (2) **PREJUDICE** resulting from the **fictitious "reenactment" by hired actors**; and (3) An **uninformed decision** by Officer Rubie's failure to come forward in the fraud and misconduct **complained** of in the **Affidavit**.

**PLEASE NOTE:** Before I proceed with my arguments regarding GROUND TWO, I would like to explain in layman's terms a series of events that happened **immediately** before electing a Judge v. Jury trial. I fear that if I do not take this time to explain to the Court what my reasoning was **at that time**, the Court will not have all of the facts regarding my concerns and my **wavier** of a Jury trial.

**IMMEDIATELY** before the Motion to Recuse hearing, my trial attorney met me in Judge's Howe's courtroom and **warned me** that the Motion to Recuse would not have any effect because Judge Howe was hearing the Motion herself rather than have another Judge from Baltimore County hear the Motion as she was **required** to do. He **AGAIN** mentioned that her **BIAS** was based on Motion to Dismiss that she ruled on back in November. Immediately after Judge Howe denied that Motion to Recuse she granted us a short recess to meet with our attorneys in the bullpen so that we could decide on a Judge v. Jury trial.

We claimed Judge Howe was **BIASED** and should have recused herself because of the following reasons:
(1) She ruled there were **no violations** of Md. Rules 3.6, 3.8, and 8.4; (2) She saw and heard **extrajudicial comments** by the prosecutor; (3) She saw and heard **extrajudicial comments** by persons who had nothing to do with the case; (4) She saw a **fictitious** version by **hired actors** who disturbed the facts of the case which were in dispute and were false.

SCANNED

During that recess my Codefendant's attorney **Charles Brown** came back to the "bullpen", and recommended that we choose a Judge v. Jury trial. He gave his **legal opinion** why Judge Howe **could show** the video to a jury. He stated that Judge Howe could show it because my trial attorney Mr. Anello had **"opened the door"** for the video to be shown since he introduced the video at the Motion to Dismiss hearing back in November 1997. Mr. Brown said that because she ruled there were **no violations** of the Md. Rules of Professional Conduct **she could allow** a jury to see it.

Mr. Brown was also very clear to point out that **both** the **prosecutor** and his **witness** made an appearance in the video, and they both would also be appearing **in the courtroom** as well. He was very clear to also state that in his legal opinion the jury would never believe that there was **never any gun** when the ACTOR in the videotape was clearly showing a "gun" being pointed at the state's witness. Mr. Brown also said that both he and Anello **were convinced** that we both would be convicted of the "gun" charges as well, and would **receive additional time**. This was **verified** by Mr. Anello at the postconviction hearing as well. At page 41 of the Postconviction transcript line 16 Mr. Anello discussed his conversation with Officer Rubie by saying:

"I tried to communicate to him that the mandatory portion of use of the handgun used in a felony changed the trial tactics and everything else. If everybody knew that was not true it would have changed our election of judge or Jury trial."

I commented to my codefendant that there was **no way in hell** that we would ever be able to convince a jury that there **was no gun** if Judge Howe did allow it to be shown. I also commented that it was better to argue **on appeal** that Judge Howe was **BIASED** rather than have Judge Howe show the video to a jury. I had pretty much decided this **PRIOR** to this meeting, but Mr. Brown **left no doubt** that I had to **waive a jury trial** rather than try and convince prospective jurors at voir dire that the Unsolved Mysteries Video was not true, and there was **never any gun**.

GROUND 2 PAGE 2

MY LEGAL ARGUMENT IN GROUND TWO IS AS FOLLOWS

Judge Cadigan's opinion/memorandum only addressed a **single issue** regarding the Jury. He never did address the three issues that I raised in my postconviction.

On page 19 of Judge Cadigan's memorandum he said:
   "The State in it's response argues that at no time were they ever intending to offer a copy of the "Unsolved Mysteries" videotape into evidence. Mr. Norman conceded that the tape would have been **inadmissible** if offered."

I begin my argument by saying **at no time** did anyone even suggest this to me. In fact it was just the **OPPOSITE** which was expressed to me and my codefendant by **Charles Brown** who visited with us in the bullpen during the recess and and gave his legal opinion why Judge Howe **could show** the video to a jury. He explained there was legal precedent, and stated a **Howard County case** where the Jury in that case was shown an actual videotape **two times**. I might add that I sent a copy of this case to my appellate attorney **during my appeal** which he failed to acknowledge and failed to raise on direct appeal and most importantly **failed to call** Mr. Brown and verify his comments to us during that recess.

On page 24 of Judge Cadigan's memorandum/opinion he stated that I had **knowingly and intelligently waived** my right to a jury trial.

I disagree with Judge Cadigan's opinion since he was not there, and could not have possibly known what was going through my mind during that time, and the **PRESSURE** that I was feeling during that **short recess**. I had already sat through a hearing on the Motion to Recuse which was heard by Judge Howe. In my own mind, I felt that Judge Howe was **SO BIASED** that she probably would allow a Jury to view the videotape if I did elect a Jury over a Judge trial. I developed this feeling as soon as my lawyer told me that she was **specially appointed** as the Trial Judge **TWO DAYS** after her denial of the Motion to Dismiss.

**THE FEAR** that Judge Cadigan never did address which I felt at that time was based **MAINLY** but not solely on my discussion with my codefendant's attorney, Charles Brown **in the bullpen** which took place **immediately** before electing a trial by Jury or by Judge. Mr. Brown's assessment only added to my fear by explaining that she could allow the video to be shown since she had **previously ruled** there were **no violations** of the Md. Rules of Professional Conduct. I had to reluctantly "accept" Mr. Brown's legal opinion since he was correct in saying that my own attorney had introduced the videotape as **evidence** during the Motion to Dismiss, and therefore she **could allow** the video to be shown. Mr. Brown used the term that my own trial attorney had **opened the door** for it to be shown since Judge Howe ruled there were no violations of Md. Rules of Professional Conduct. In addition, Mr. Brown added to **THE FEAR** by reminding us **BOTH** that the **prosecutor** in this case, and his **witness** had taken part in and **appeared in the video**, and would also be **appearing in court**; and the Jury would not be able to believe there was **never any gun** when the "ACTOR" was clearly showing a "gun" being pointed at the state's witness. **IN ADDITION** he added to the fear again by informing us that both he and Anello were convinced that if Judge Howe did allow the video to be shown we would be convicted of the "gun" charges as well and would **receive additional time**.

**THE PREJUDICE** which Judge Cadigan **never did address** in his memorandum/opinion which I was feeling could not be overcome because the Prosecutor and his Witness appeared on National T.V. which **fictitiously portrayed** an "ACTOR" holding a "gun" to the head of the state's witness. **BOTH OF THEM** gave **live interviews** in an Episode that was **HOSTED** by the **ACTOR ROBERT STACK** who for years played the role of **ELLIOTT NESS** on the **UNTOUCHABLES**. Mr. Stack opened the program by announcing to the audience that what they were about to see was a **REENACTMENT** of a crime committed in Baltimore. No defendant or attorney could overcome this type of **pretrial prejudice**.

**THE UNINFORMED DECISION** was due to the **withholding** of the information regarding the **pretrial** conversations between Officer Rubie and the prosecutor which did not reach the light of day until Officer Rubie complained to my trial attorney at the ballgame. I believe that I was **uninformed** because it is a **matter of fact and remains undisputed** that this information was **unknown** until April 1999 which was 14 months after trial. The reason that it was unknown is because this information was **withheld** by Officer Rubie himself.

**THEREFORE** since this information was **not known** and was **withheld** until 14 months after trial, it contributed solely to my making an **uninformed decision** about a Jury vs. Judge trial. That is why I believe that Judge Cadigan's finding is in error when he stated in his memorandum/opinion at page 24:

"that I had **knowingly and intelligently** waived my right to a jury trial."

During the time of my direct appeal, I **continually** wrote a series of letters which have previously been submitted as **EXHIBITS** to this Court back in March of 2004. Each of the following mentioned **EXHIBITS** discussed my fears of Jury selection to my Appellate Counsel who ignored all of them and failed to address any of my fears to the Court of Special Appeals. Those Exhibits are:

1. EXHIBIT-38 my letter of October 10, 1998;
2. EXHIBIT-39 My letter of October 12, 1998;
3. EXHIBIT-40 My letter of October 17, 1998;
4. EXHIBIT-41 My letter of October 18, 1998;
5. EXHIBIT-43 My letter of November 28, 1998.

In each of those letters I was quite explicit of my conversation with **Mr. Brown** and I explained that at **NO TIME** did he or anyone else ever suggest that Judge Howe **would not** show the video to a jury if we selected one. In fact it was **quite the opposite**. He even said there was precedent that **she could** show the videotape since there was a Howard County case that was shown a videotape to the jury **two times** during the trial.

**EXHIBIT-40** was my letter of October 17, 1998 and included a copy of <u>Group W. Television et. al v. State of Md. et. al</u> 96 Md. App. 712, 626 A2d 1032, (1993). This is the case which Mr. Brown stated had set the precedent for Judge Howe to show the videotape of a jury.

In part of that letter to Mr. Greer I stated:

"You will note that it was the **STATE THAT AGREED** with the public defender office that showing the video **would taint jury selection** for Solomon who was going to stand trial in Baltimore County, and that **IT DID** create a problem in the Miller case in Howard County as the trial Judge had noted that only 2 or 3 jurors **were unfamiliar** with the case out of **166 potential jurors**."

I also explained in that same letter:

"This is what Shaffer's attorney had warned us about and he was correct in that it was played **two times** for the Jury in Howard County... **I was never told by anyone** that Judge Howe would not show it to a jury. In fact, the only thing I was told was **THAT SHE COULD** because we introduced it as evidence..."

**IN EACH LETTER** to Mr. Greer I went into great detail what affects the <u>television video</u> had on my decision why **I did not believe** that I could select and impanel a jury that **would not be affected** by what they saw if Judge Howe would have allowed it to be shown. I also included a United States Supreme Court case dating back to 1950 which was <u>Maryland v. Baltimore Radio Show</u> 70 S.Ct. 252, 1950. This case involved a **RADIO PROGRAM** where the announcer told the audience that the defendant **RE-ENACTED** the crime with the police. The Supreme Court remarked that they agreed with the defendant's attorney **to forego a jury trial**. The Court said:

"The Court hardly needs evidence in this **factual situation** to reach the conclusion that James' **FREE CHOICE** to either a court trial on the one hand and a jury trial on the other hand has been clearly and definitely **interfered with**..."

The Supreme Court went on to say:

> He simply could not afford to subject his client to the risk of trying his case **before a jury** in a community where this **extraneous and improper matter** had been broadcast. He did in fact elect a **court trial**, but he **did not have any alternative** according to his counsel. Well now it hardly seems necessary for the court to say to men who are experienced in the trial of jury cases that every time defense counsel **asked a prospective juror** whether he heard a **radio broadcast** to the effect that his client confessed to the crime or that he had been guilty of similar crimes he would by that act be driving just one more nail in James' coffin. **We think therefore the remedy was useless.**"

My own attorney expressed these same comments about jury selection and how the **fictitious gun portrayed** in the video and how it affected my choice. At page 41 of the postconviction transcript my trial attorney discussed his **third conversation** with Officer Rubie when Rubie called to cancel the appointment that he previously agreed to **without hesitation or reservation**. Anello said:

"He basically indicated to me that **because** you were found **not guilty** in regard to the handgun charges, that basically no blood no foul that you know. there was **no harm done** in that he never really altered his testimony on the handgun **at the urging of Mr. Norman** and you were found not guilty of it. I tried to communicate to him that the mandatory portion of use of a **handgun changed the trial tactics** and everything else. If everybody knew **that was not true** it should have been dismissed, it would have **changed our election of judge or jury trial.**"

I believe that <u>Maryland v. Baltimore Radio Show</u> 70 S.Ct. 252, 1950 **DID SET PRECEDENT** why there cannot be any **pretrial re-enactments** in the mass media prior to any criminal trial. Any defendant would be at the mercy of the television station who would be in **total control** of what parts of the video they wanted to be played over and over again. This is exactly what happened in my own case. The program was played **two times** prior to trial.

GROUND 2 PAGE 7

In my letters to Mr. Greer I expressed the **same concerns**. I explained that **VOIR DIRE WAS NOT AN OPTION** for me that I was willing to take because I would have to try and convince **each** potential juror that **MR. STACK, aka "ELLIOTT NESS"** was wrong, and this was **NOT A RE ENACTMENT** as he told the television audience. I was **EXTREMELY CONCERNED** that we would have to ask **each prospective juror** if they saw the program. This would then only lead to more questions in their own minds if they didn't. **In addition** I was **most concerned** that the Prosecutor and his Witness who were in the video would also be **in the courtroom** as well. **MOST IMPORTANTLY** I would also have to explain that **the actor holding a "gun"** was performing to a **fictitious script** and that there was **never any gun**. I just did not believe that I could convince any juror would believe me **instead of Mr. Stack**, and what was portrayed. This was **not an option** I felt I could take because of Mr. Stack's **popularity as a star**.

This same program was shown for a second time **two weeks before trial**, and there was no attempt by the prosecutor to **stop** showing the fictitious portrayal by the hired actor pointing a "gun" at the State's witness. In fact, this same program is still continuing to play even to this present day, **8 years later**, and the audience is still being shown the fictitious portrayal of the State's witness being "threatened" by having a "gun" being held against his head.

EXHIBIT-38 was my October 10, 1998 letter to Mr. Greer and at page 3 I said:
  "I discussed it further with Shaffer and made him realize that there was just **NO WAY IN HELL** that we would be able to convince **ANY JURY** that there was **NO GUN** if **ELLIOTT NESS** told them that what they were about to see was a **"RE-ENACTMENT"**. Everybody knows that Robert Stack played the part of Elliott Ness for years on **THE UNTOUCHABLES**, and there was just no way of convincing a jury that there was **NO GUN** at anytime."

**EXHIBIT-38** goes on to explain to Mr. Greer:

"Mr. Brown then returned and we told him of our choice and he said to make sure that when we went back into the courtroom to make sure that **we said as little as possible** because she was still **"UPSET"** over the recusal hearing because Anello had told Judge Howe that **SHE WAS SEDUCED** by the video, and that she could not be impartial because **SHE WAS BIASED**. At that point I **reluctantly agreed** because I could not very well explain to Judge Howe that I was selecting her over a jury **because** I felt that **I was forced** to select a Judge **who was biased**, and **could allow** a jury to see a **fictitious video** if I elected a jury trial. I invite you to call Mr. Brown and verify this conversation with us, and have him repeat what he said." I even ended that letter by stating to Mr. Greer:

"I believe that the Constitution of The United States allows for me to have been **entitled to a better choice**..."

Therefore I believe that I have shown that my **waiver of a jury** was predicated on Fear, Prejudice, and an Uninformed decision.

I also believe that Exhibits 38, 39, 40, 41, and 43 show how many times I brought these issues before my appellate counsel who ignored my every attempt to contact him regarding my appeal. **THEREFORE** in regards to Ground Two, I believe that counsel was **ineffective on appeal** and that Judge Cadigan's ruling **was in error** and was an **unreasonable application** of clearly established Federal Law regarding **waiver of jury** as well a ineffective assistance of counsel as determined in Strickland v Washington 466 U.S. 668, 102 S.Ct. 2052 (1984), as well as **Evitts v. Lucey** which the Supreme Court held:

"The Fourteenth Amendment **guarantees** a criminal appellant pursing a **first appeal** as of right, certain minimum safeguards necessary to make that appeal **adequate and effective**. See Griffin v. Illinois, 351 U.S. 12, 20, 76 S.Ct. 585, 591 (1956)...First appeal as of right is not adjudicated in accord with due process of law if appellant does not have effective assistance of attorney. U.S.C.A. Const. Amends, 6 and 14."

**GROUND 2 PAGE 9**