## IN GROUND SEVEN OF MY HABEAS PETITION I ALLEGED

I had alleged that the **voluntary appearance** of the Assistant State's Attorney and his Chief Witness on a Nationally televised program in which **ACTORS** were hired to **reenact factual events** which were in dispute prior to trial, and **before** they could be determined within the sanctity of the courtroom **HAD BLATANTLY INTERFERED WITH** this defendant's Constitutional right to select and impanel an Impartial Jury in that it was **designed to influence** any potential juror; and also operated to the prejudice of this defendant by his fear that he could not impanel an impartial jury.

The State' Attorney Office in Baltimore County responded by saying to their own Initial response to Judge Cadigan by saying:

"The State responds simply and succinctly that the petitioner **never attempted** to impanel a jury. Therefore the issue if not ripe for review under this or other type of hearing."

Judge Cadigan ruled in his written opinion/memorandum at page 33 saying:

"As previously stated this claim is likely **waived** due to **petitioner's failure to raise this issue on appeal**..."

PETITIONER'S FINAL RESPONSE TO GROUND SEVEN

I am asking this court to consider the **original** U.S. S.Ct. case law that I cited in my **Original** petition for Habeas Corpus Relief to this court. **IN ADDITION** to these cases I further supported my argument by submitting to this court certain **EXHIBITS OF LETTERS** which I feel demonstrate that during the time of my appeal, I **ATTEMPTED** to have Mr. Greer raise the issues I have alleged in **Ground Seven** on more than one occasion, but **he ignored all of my attempts**. I submit to this court that each of those letters explained to Mr. Greer the **many reasons** which **interfered with** my Constitutional Right to **impanel an impartial jury**. Those EXHIBITS were as follows; **EXHIBITS 37, 38, 39, 40, 41, and 43**

**EXHIBIT-37** was my letter of October 07, 1998 informing Mr. Greer that I feared that the **prosecutor** and his **witness** appearing in a television **"reenactment"** hosted by the **Actor** Robert Stack who played **Elliott Ness** for years on television would make it impossible for a jury to believe that **there was no gun**.

GROUND 7-1

SCANNED

**EXHIBIT-38** is a four page letter to Mr. Greer dated October 10, 1998 which was **PRIOR TO** Mr. Greer filing my appeal. In this letter I explained to him what **my fears were** regarding the **fictitious portrayal** of a gun by the **actor** in the video. **MOST IMPORTANTLY** I explained to Mr. Greer on page two my conversation with Charles Brown who was my codefendant's attorney, and how **he told us** in the bullpen that Judge Howe **could show** the videotape because my own attorney **introduced it as evidence** in a Motion to Dismiss, and that **BOTH** he and Anello were convinced that we would **never** be able to convince a Jury there was **NO GUN** if Judge Howe would allow a jury to see it in the courtroom. I also explained to Mr. Greer that **Brown** had said there was precedent that she **could allow** it to be see because of a Howard County case.

I believe this is also confirmed by Mr. Anello when he gave testimony at the postconviction hearing. At page 40 and 41 of the transcript the following took testimony by Anello took place between me and Anello:
Question: Do you still stand by your statement that the **handgun** was a crucial issue in deciding whether or not to **pick a jury or judge**?
Anello: **Absolutely**

Then at page 41 of the transcript Mr. Anello stated on the record:
"I tried to communicate to him that the Mandatory portion of use of a handgun use of a felony **changed the trial tactics** and everything else. If everybody knew that was not true it should have been dismissed, **it would have changed our election of a Judge or jury trial...**"

**In addition I believe I made it abundantly clear** that I had also discussed it with Shaffer and made him realize that there was just **no way in hell** that we would be able to convince **ANY JURY** that there was **NO GUN** if **Elliott Ness** told them what they were about to see was a **"REENACTMENT**. I even asked in that letter for Mr. Greer call Mr. Brown so as to verify this discussion took place **in the bullpen**. He again **IGNORED** this and **failed to call Brown** just as he **failed to call Anello** about the affidavit. I also add that within this same letter to him I had stated to Mr. Greer:
"I believe that the Constitution of The United States allows for me to have been **entitled to a better choice** rather than selecting a Judge out of fear that she might allow HOLLYWOOD ACTORS into the courtroom. **No DEFENDANT** could overcome that type of **PREJUDICE...**"

**EXHIBIT-39** is my letter of October 12, 1998 to Mr. Greer. I had attached a Federal Case from the 4th. Cir. Ct. of Appeals which was on point with my own and discussed a Federal Judge's Ruling that witnesses were **not allowed** to make an statement with the media in order to protect fair trial rights. In addition I again compared why I felt I could select and impanel a jury due to the fact that I was told Judge Howe **COULD** allow the video to be shown to a jury. The cite for that case was 726 F.2d 1007, (1984).

**EXHIBIT-40** was my October 17, 1998 letter to Mr. Greer explaining **again** why I felt I could not impanel a jury. I attached a copy of the case Mr. Brown had **WARNED** us about in the bullpen. I made it clear that in that case, they played the video **two times** during trial. In addition I also explained how out of 166 potential jurors in that case, the judge said that only two or three were unfamiliar with the case. I also explained how that same Howard County Judge **was concerned** over what effect the video would have on the other defendant who had not yet selected a jury, and I attached a copy of the case as well for him to review.

**EXHIBIT-41** is yet another letter to Mr. Greer dated October 18, 1998 and I also attached a U.S. S.Ct. case which involved a **RADIO BROADCAST**. I also pointed out that was **NO DIFFERENCE** between what Mr. Brown had presented to us in the bullpen compared to what Mr. James' lawyer was faced with when he to have James tried by the court rather than by Jury. I made it clear to Mr. Greer that it was **the videotape** itself and the **fictitious gun** by one of the actors that **had interfered with** my decision to select a Judge rather than **risk the chance** of Judge Howe allowing a jury to see the video like was done in the Howard County case mentioned by Mr. Brown which was Group W. Television et al. v. State of Md. 96 Md. App. 712, 626 A.2d 1032.

**EXHIBIT-43** was my November 28, 1998 letter to Mr. Greer which had attached copies from my trial attorney's Motion to Dismiss and Motion to Recuse. I also explained how important the **TRANSCRIPT** was, and I **explained** to him that Anello's Motion to Recuse was based on Judge Howe's **failing to rule** that there were **violations** of the Rules of Professional conduct. I believe that I had every right to expect to have these issues raised by him during my direct appeal which he failed to do after being made aware of these issues.

I also mentioned **AGAIN** about **Robert Stack** taking part in the video, and I clearly explained to Mr. Greer:

I want to also say that in order for you to raise any issues relating to the Motion to Dismiss or Motion to Recuse **you need the videotape**... You also need to listen to the actor **Robert Stack aka Elliott Ness** telling the t.v. audience that this was a **"Reenactment"**.

And on the very last page of **EXHIBIT-43** I made another plea saying:
"If you look at the video, and compare it to the **transcript** of the November 24, Motion to Dismiss you will see what she said that Sal considered to be biased, and you will be able to see **the actors displaying a gun** when there was never any gun. How many times do I have to say this to you. **PLEASE** get the transcript, and get a copy of the video to compare them to Sal's Motion to Dismiss, and his Motion to Recuse. **PLEASE PLEASE PLEASE REPLY**".

In addition to having submitted these exhibits, I also submitted case law that I believe support my claims that the videotape **interfered with** my ability to think I could impanel and select an **impartial jury**.

Exhibit-50 was **Rideau v. Louisiana** 373 U.S. 723, 83 S.Ct. 1417, (1963). In this case Chief Justice Stewart commented on what I believe to be pertinent to my own case. Justice Stewart held that the refusal for a change of venue was a denial of due process and discussed the **moving picture film with soundtrack** had been made of an interview in jail between the defendant and The Sheriff who admitted to kidnapping, murder, and robbery in response to leading questions by the Sheriff. The film had been **televised three times to tens of thousands** of people..."

Justice Stewart also commented:
"Under the Federal Constitution guarantee of due process a person accused of committing a crime is vouchsafed basic minimal rights, among these are the right to counsel, the right to plead not guilty, and the right to be tried **IN A COURTROOM** presided over by a Judge..."

This would also mean that they would have never sanctioned a **prosecutor** taking part in any **pretrial reenactment** on National T.V. and **hiring actors** as well to disturb the facts of the case.

GROUND 7-4

Even Justices Clark and Harlan who **both dissented** commented:
>First I do not believe it within the province of law enforcement officers actively to **cooperate in activities** which tend to make **MORE DIFFICULT** the achievement of **IMPARTIAL JUSTICE**... Second, I agree fully with the court that one is deprived of Due Process of Law when he is tried in an environment so permeated with hostility that judicial proceedings can be but a hollow formality..."

My final exhibit was **EXHIBIT-51** that was taken from an ongoing case which is United States v Moussaoui, 205 F.R.D. 183, (2002). In this case, both the United States and the defense as well **joined** in vigorously **opposing** Court T.V. from **recording and telecasting** the pretrial and trial proceedings. I am bring this to the court's attention because this case involves an **ADMITTED MEMBER OF AL QUAEDA** who was afforded the benefit of Constitutional Protections which I was denied in the State court.

This case came before Judge Brinkema of the Eastern District of Virginia. That case involved a Motion by Courtroom Television Network to record and telecast the **Pretrial and Trial Proceedings**. In that opinion of the case it stated in part:
>"The United States **vigorously opposes** the intervenors constitutional challenge to the ban and raises compelling objections to the photographing and **broadcasting** of these proceedings **in any format**... The United States also argues that any **retrial** of this highly publicized case would be rendered **extremely difficult** if the trial proceedings have been broadcast. A **potential juror** who had watched portions of the first trial **could be tainted**..."

Her Honor, Judge Brinkema then went on to say what I have been trying to argue during my appeal and is that:
>"...It remains a bedrock principle of our legal system that the courts have the right to conduct their business in an **untrammeled way** quoting Wood v Georgia, 370 U.S. 375, 383, 82 S.Ct. 1364, 8 L.Ed. 2d 569, (1962). To **ensure** that **both** this defendant **and** The United States receive a fair and orderly tril, **none** of these proceedings should be photographed or **broadcast in any form**. We find that all of these **concerns provide compelling reasons for prohibiting** any photographing or broadcasting of **either pretrial** or trial proceedings..."

GROUND 7-5

In ending and before I cite the appropriate cases which I believe agree with my issues let me say to this United States Court is that since I have no legal training at all, I would like to say that what I have **ALWAYS** tried to present to the State Court as well as this Court is that it is **The Appearance** of the prosecutor on National Television **prior** to trial was the **most objectionable** thing that I had objected to and then allowing his witness to appear on the program as well. We had mentioned this in the Motion to Dismiss. There is no way that any Federal Prosecutor would ever be allowed to participate in any **pretrial reenactment** and then to be able to **disturb the facts** of the case by **introducing a gun** when there was never any gun.

I understand that you cannot stop **the public media** from presenting their own "spin" on what they want to present. But in my own case, it was the **STATE PROSECUTOR** who participated in the program, and allowed his own witness to have **an unfettered opportunity** to present what he wanted the television viewer to believe. This was established at the Motion to Dismiss hearing when the prosecutor admitted that he wasn't there when his own witness had appeared for his "Presentation". When the **PROSECUTOR** appears in a program, and is hosted by a famous Actor the viewing public is **more inclined to believe** that what they were viewing is true as is presented. If the viewer see's a "gun" they believe there was a gun. If the witness tells them he was "**Tortured** the viewer would tend to believe that this was true, **even if it wasn't**. If the viewer hears the witness tell them that his children were threatened, the viewer would tend to believe it because **The Prosecutor** who represents **The Government** gives affirmation or credibility to what the viewer is seeing is accurate. This is also true if you use **Famous Actors** to introduce the program as a "**Reenactment**". This is the type of **PREJUDICE** that no defense attorney would be able to overcome, and would affect **MOST** potential jurors.

I believe this is demonstrated in the following cases, and was regarded by Judge Brinkema to be harmful if there would be any **pretrial broadcast** on National Television. No Federal Prosecutor would ever think of taking part in any **pretrial** television program. In fact in the **Moussaoui** case the United States objected **VIGOROUSLY** to Court T.V.'s Motion to film any pretrial proceedings.

GROUND 7-6

Therefore I believe that I have demonstrated that the issues I raised in Ground Seven **were not waived** as determined by the postconviction court, and that the **failure to raise** these issues was the result of **ineffective assistance of counsel on appeal**.

I also believe that the case law cited herein in Ground Seven applies to the instant case, and that the postconviction court's ruling was contrary to and involved an unreasonable application of Federal Law as determined in the following cases which I believe apply to my own and are:

1. **Strickland v Washington**, 466 U.S. 668, 102 S.Ct. 2052 (1984) dealing with ineffective assistance of counsel; as well as **Evitts v. Lucey**, 469 U.S. 387, 396 (1985);

2. **U.S. v. Josephine Gray**, 189 F. Supp. 2d 279 (2002) dealing with violation of **pretrial publicity**. as well as;

3. **Rideau v Louisiana**, 373 U.S. 723, 83 S.Ct. 1417, (1963) regarding a denial of due process for **televising** a video confession prior to trial.

4. **U.S. Ct. Of Appeals v Morrissey**, decided February 11, (1999); regarding **extrajudicial statements**, and violations of **pretrial publicity**;

5. **Hirschkop v Va. State Bar**, 421 F. Supp, 1137, (1976) 4th. Cir. in regards to violation of the codes of responsibility which would also cover the instant case since the prosecutor in my own case was also governed by the Codes of Professional Responsibility of the Md. Bar.

This concludes my reasoning as to Ground Seven.

GROUND 7-7