IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SALVATORE SPINNATO | * | |
| #272280 | | |
| v. | * | CIVIL ACTION NO. JFM-02-4213 |
| | | |
| J.P. GALLEY,  WARDEN and | * | |
| THE ATTORNEY GENERAL OF THE | | |
| STATE OF MARYLAND | * | |
| | ****** | |

### MEMORANDUM

Now before the court is the Amended Petition of Maryland prisoner Salvatore Spinnato

for Writ of Habeas Corpus (Paper Nos. 1 and 18),  the State's Answer thereto (Paper Nos. 13 and

30), and petitioner's traverse.  (Paper No. 40, 62, 82 and 84).   After review of these papers, the

court finds no need for an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254*

*Cases in the United States District Courts; see also* 28 U.S.C. Section 2254(e)((2).  For the

reasons that follow, the Petition will be DENIED and DISMISSED WITH PREJUDICE.

### <u>Procedural History</u>

Petitioner was charged in the Circuit Court for Baltimore County, with kidnapping, false

imprisonment, assault with intent to maim, assault, battery, and carrying a concealed deadly

weapon. Paper No. 13, Ex. 1.  On February 9 and 10, 1998, petitioner was tried by the court, the

Honorable Barbara Kerr Howe presiding.  *Id.*

The facts adduced at trial, as described by the Maryland Court of Special Appeals, follow.

The instant case was the result of the kidnapping and assault of Lynn Hogg
on July 3, 1996.

Lynn Hogg was the boyfriend of Elizabeth Smith, appellant's ex-wife.
Appellant and  Smith separated in February, 1995 and were divorced in
September, 1995.  Appellant, however, continued to have feelings for Ms. Smith.

Shortly before the incident giving rise to this case, Ms. Smith went on a trip to Peru with her sister. Although the record does not indicate the precise dates of the trip, she was away from at least June 25, 1996 to the time of the incident. Jason, her sixteen year old son, remained at home. Smith believed that Jason and his friends had drunk beer and smoked marijuana in her house. She asked appellant to look in on Jason while she was away. Appellant agreed to do so.[1]

According to Hogg, he received a telephone call from appellant on June 25 or 26, 1996. Appellant told Hogg that he was alarmed at Jason's drug use and that he wanted to talk to Hogg about Jason. On June 26, Hogg met with appellant at the Catonsville Junction Café in Catonsville. When they met, appellant showed Hogg vials of white powdered substances that he said were Jason's. After the discussion, appellant and Hogg left the café separately.

Appellant telephoned Hogg on July 2, 1996 and told him that he wanted to speak with him about Jason again. He asked Hogg to meet him at 9:30 the next morning at a 7-Eleven store in Arbutus.

Hogg had previously been married and had three children. The children were living with him at the time. On the morning of July 3, 1996, Hogg left his children sleeping at home and met appellant at the 7-Eleven. The two men went inside and bought coffee. They then went outside and appellant told Hogg that he had cassette tapes that indicated the extent of Jason's drug involvement. Appellant told Hogg that he wanted to play the tapes for him. He told Hogg that he was in the process of buying a house "just around the corner" from the 7-Eleven and suggested that Hogg follow him there in his car so that they could play the cassettes at the house.

Hogg followed appellant to the house. When they exited their cars, they walked around the lot for a few minutes, and appellant then invited Hogg inside the house. As Hogg walked through the front door, he saw Shafer, appellant's co-defendant, coming from the right corner with a device in his hand. Shafer struck Hogg in the back of the head with the device. The device was metal and "gave off a very strong electric shock." Appellant and Shafer wrestled Hogg to the ground. Shafer then handed the device to appellant. Shafer kicked Hogg "a couple of times" and both men continued to hit him. Appellant hit Hogg with the device repeatedly, "30, 40 times or more," on his legs, arm and back. He told Hogg that he was going to kill him.

While Hogg was struggling with Shafer, he reached around Shafer's back and felt what appeared to be a semi-automatic handgun. According to Hogg, at one point, Shafer showed him the gun. At another point, Shafer held the gun to Hogg's head and appellant told Hogg that Shafer was going to kill him and that he would never see his children again. Appellant also told Hogg that there was a

rolled up carpet in the house because they were going to kill him and roll his body in the carpet and send it to New York.

Hogg's house was for sale at the time and during the struggle, Shafer made comments about Hogg's house. Shafer told him that he did not think he was going to get his asking price, and asked if the roof was really seven years old. Shafer also made comments about Hogg's children. He mentioned that Hogg's daughter really liked panda bears and Hogg's sons liked the Dallas Cowboys. Appellant asked Shafer what Hogg's daughter's name was. Shafer replied, correctly, that it was Katie. Upon hearing these comments, Hogg recognized Shafer as the man who had telephone him the day before appellant had called him the first time and had come to his house to talk to him about buying it. During the assault, Shafer told appellant that he thought that they should kill Hogg then. Appellant told Hogg that he was not sure whether to kill him. Appellant told Hogg that, if he "caused a scene," he was going to have his children killed.

Hogg asked appellant why he was assaulting him. Appellant told Hogg that it was about Smith, whom appellant referred to as his wife. Appellant told Hogg that he wanted to talk to him and suggested that they go to the basement. Hogg refused to do so. Appellant told Hogg that they were "gonna take a little ride." Appellant gave Shafer the keys to his car and told him, "You know where to go," and "I'll call you later." Appellant and Hogg left the house sometime around noon.

Hogg did not want to go with appellant, but the men had threatened Hogg's children, and Hogg believed that Shafer was going to his house. Appellant and Hogg drove around for about ten minutes in Hogg's vehicle. Appellant told Hogg that, if he went to the police or "caused any kind of scene," Appellant would have Hogg's children killed. Appellant told Hogg to pull into the parking lot of a diner. The men went inside the diner.

Inside the diner, appellant told Hogg that he would have to end his relationship with Smith. Appellant again threatened Hogg's children. At that point, Hogg's daughter paged him from home. Hogg used a code to ask whether everything at home was all right, and was told that it was. Hogg agreed to break up with Smith. As they left the diner, appellant and Hogg shook hands. Hogg immediately went home and took his children out of his house to a safer place. Late that night, Hogg contacted the police and reported what had happened.

Appellant testified in his own defense. He admitted that he had asked Hogg to meet him at the 7-Eleven. He stated that he did so because he wanted Hogg to hear tapes he had made of Jason on the telephone to show him how serious Jason's drug problem was. Appellant admitted that he also wanted Hogg

to "back off with Beth." He stated that, when he suggested that Hogg accompany him to the house, he knew that Shafer would be there. According to appellant, he wanted Shafer to be there to work on the house and to intimidate Hogg into breaking up with Smith. Appellant testified that he chose Shafer to intimidate Hogg because Shafer had experience at boxing, and because '[h]e's a big guy." Appellant testified that Shafer was not supposed to assault Hog. He described the device he used on Hogg as a "stun device" sold over the counter. According to appellant, the device  emits an electrical shock when applied to someone. He denied, however, that he used the device. Appellant further testified that he had not known that Shafer had previously been to Hogg's house. He stated that he had not intended to injure Hogg. He denied that he or Shafer had a handgun.

Appellant stated that he "probably" hit Hogg on the arm. He conceded that he was "very vocal" and that he screamed at Hogg. He denied, however, that he had threatened Hogg or his children. Appellant testified that he wanted Hogg to go to the basement in order to separate him and Shafer. He asked Hogg if he would drive him somewhere to have coffee with him and Hogg agreed. Shafer left, then he and Hogg left. The men had been in the house "no more than 20, 22 minutes, at most."

---

[1]According to Hogg, Smith did not ask him to look in on Jason while she was away because Hogg was going to be away for part of the time himself.

Paper No. 13, Ex. 7, pp 1-7.

After conclusion of the case, petitioner was convicted of kidnaping, conspiracy to kidnap, false imprisonment, assault with intent to maim, assault, and battery. *Id.*, Ex. 3. Petitioner was sentenced, on March 4, 1998, to a twenty year term for kidnaping, a concurrent twenty year term for conspiracy to kidnap, and a consecutive fifteen year term for assault with the intent to disable. All remaining convictions merged into these offenses. *Id.*, Ex. 4, pp. 41-42.

On appeal, petitioner raised two claims: (1) whether the evidence was insufficient to sustain his convictions for kidnaping and assault with intent to disable; and (2) whether the trial judge abused her discretion in failing to recuse herself. *Id.*, Ex. 5. Petitioner's convictions were upheld in an unreported opinion, by the Maryland Court of Special Appeals. *Id.,* Ex. 7.

Spinnato filed a petition for writ of certiorari raising the following questions:

1.   Did the viewing by the trial judge of a false, exaggerated and tabloidized
     nationally televised depiction of petitioner's alleged crimes and character require
     her to recuse herself?

2.   Can petitioner be guilty of kidnaping or conspiracy to kidnap when the asportation
     was merely incidental to an imprisonment and assault?

3.   Can petitioner be guilty of kidnaping, when the victim drove himself to his
     intended destination and there was neither force nor threat of force employed? and

4.   Can petitioner be guilty of assault with intent to disable when no disability
     resulted from the assault and there was no evidence that the device used in the
     assault was capable of disabling anyone.

*Id.*, Ex. 8. The Court of Appeals of Maryland denied petitioner's request for a writ of certiorari.

*Id.,* Ex. 9.

In an original and amended petitions, Spinnato sought post conviction relief in the

Baltimore County Circuit Court. *Id.*, Ex. 10 and 11. The post-conviction court characterized the

issues raised, and not abandoned, by petitioner as follows: (1) he was denied due process and the

right to a fair trial based on the prosecutor's act of influencing a witness; (2) his jury trial waiver

was involuntary and uninformed based on the prosecutor's act of influencing a witness; (3) he

was denied due process because the events underlying the crime he committed were re-enacted

on an episode of the "Unsolved Mysteries" television program, which aired prior to his trial; (4)

he was denied due process because the prosecutor, in violation of the Maryland Rules of

Professional Conduct, counseled a witness to testify falsely and tried to influence prospective

jurors; (5) the trial judge should have recused herself based on her viewing of the "Unsolved

Mysteries" episode; (6) appellate counsel was ineffective for failing to raise issues, maintain

adequate communication, and have prepared a transcript of a relevant pretrial hearing; (7) his

4

right to a fair trial was compromised by the prosecutor's appearance on an episode of "Unsolved Mysteries"; and (8) the trial court erred when it precluded him from examining Hogg with regard to his prior psychiatric record. *Id.*, Ex. 10 and 11. On February 4, 2002, the post-conviction court denied the petition for relief. *Id.* Ex. 12.

Petitioner filed an application for leave to appeal the post conviction court's ruling, raising the same eight grounds of error. *Id.*, Ex. 13. The Maryland Court of Special Appeals summarily denied petitioner's application for leave to appeal. *Id.*, Ex. 14 and 15.

Thereafter, petitioner field a Motion for New Trial and/or Motion to Set Aside Judgment in the Circuit Court for Baltimore County, arguing that he was entitled to relief because Officer Rubie withheld information critical to the defense. *Id.*, Ex. 16. The motion was denied without a hearing on August 16, 2002. *Id.*, Ex. 17. Petitioner filed an application for leave to appeal that determination which was denied. *Id.*, Ex. 18. On March 14, 2003, petitioner moved to reopen his post-conviction proceedings. The motion was subsequently denied.

## II. **Threshold Considerations**

### A. **Exhaustion of State Remedies**

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing all available remedies available in state court.    This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by

5

seeking leave to appeal from the Court of Special Appeals. Petitioner no longer has direct appeal or post-conviction remedies available in connection with the claims raised before this court, and thus has exhausted the claims presented here.

**B. Statute of Limitations**

There is no contention that the petition is time-barred pursuant to 28 U.S.C. §2244(d).

### III. <u>Standard for § 2254 Review</u>

Because this petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001). AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *See Bell v. Cone*, 535 U.S. 685, 693 (2002). Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> 1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*). In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision

is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

With these standards in mind, the court will address the merits of petitioner's claims.[1]

---

[1] Although, many of petitioner's claims are inter-related. The court will address each claim in turn.

**1. Prosecutorial Misconduct**

In reviewing petitioner's claim of prosecutorial misconduct, the post-conviction court

found as follows:

> In Ground One of Mr. Spinnato's Post Conviction Petition, he alleges that
> he was denied his constitutional right to a fair trial as a result of the Assistant
> State's Attorney, Mickey Norman's violation of the Maryland Rules of
> Professional Conduct. The Petitioner alleges that Mr. Norman violated Rule
> 3.4(a),(b), and (c), in that he:

> (1)    Pressured Officer Rubie on more than one occasion to change his
>        testimony in regard to his taking Mr. Hogg's statement;
> (2)    Pressured Officer Rubie to say that he was mistaken in failing to
>        describe the alleged handgun in more detail;
> (3)    "Suggested" to Officer Rubie that he had overlooked certain details
>        and threats that Mr. Hogg had relayed to him regarding
>        circumstances and threats made by the Petitioner which led to Mr.
>        Hogg to accompany him to the diner after the assault;
> (4)    Upset Officer Rubie with the type of "coaching" he used in
>        preparation of Mr. Hogg's testimony at trial.

> The Petitioner alleges that Mr. Norman's conduct also violates Maryland
> Rule 8.4(a),(c),(d), thereby denying Petitioner Due Process of Law and his Right
> to a Fair Trial.

> The Petitioner relies on Mr. Anello's [petitioner's counsel at trial] account
> of a conversation that occurred between himself and Officer Rubie at a baseball
> game, where the two men ran into each other. During the conversation, Officer
> Rubie expressed some discontent with the manner in which Assistant State's
> Attorney Mickey Norman conducted himself. During the Post Conviction
> hearing, Mr. Anello characterized officer Rubie's discontentment as an attempt to
> influence Officer Rubies' recollection of the events as told to him by Mr. Hogg,
> the victim. When Officer Rubie testified at the Post Conviction hearing, he stated
> that his problem with Mr. Norman was the insinuation that Officer Rubie had not
> done his job thoroughly. Officer Rubie never believed that Mr. Norman's
> statements regarding his police report were efforts to alter his testimony or his
> recollection of the events which were the subject of the investigation.

> Although Officer Rubie admits having spoken with Mr. Anello, he
> disagrees with the Petitioner's assertion that Mr. Norman ever pressured him to
> change his testimony. Officer Rubie testified that he was never present when Mr.

8

Norman met with Mr. Hogg in preparation for the trial. Officer Rubie testified that, although he told Mr. Anello that he and Mr. Norman had discussed issues regarding the details fo the gun, at no time did he tell Mr. Anello that Mr. Norman attempt to influence his testimony....

Assuming appellate counsel was ineffective and the issue has not been waived, Petitioner must show that Mr. Norman interfered with the Petitioner's right to a fair trial. Courts have granted relief on the basis of Prosecutorial Misconduct when it is of "'sufficient significance to result in the denial of the defendant's right to a fair trial.'" *U.S. v. Bagley*, 473 U.S. 667, 676 (1985) (quoting U.S. v. Agurs, 427 U.S. 97, 108 (1976).

The Maryland Rule of Professional Conduct 3.4 states:

**Fairness to Opposing Party and Counsel.**
A lawyer shall not:
(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on assertion that no valid obligation exists[.]

The Petitioner has failed to allege any facts that would support the contention that Mr. Norman obstructed his access to evidence or unlawfully destroyed or concealed a document having potential evidentiary value or counseled or assisted another to do the same as prohibited under Rule 3.4(a) of Rule of Professional Conduct.

The Petitioner alleges that Mr. Norman pressured Officer Rubie to change his testimony and insinuates that Mr. Norman also influenced Mr. Hogg's testimony. It has long been held that a prosecutor denies a defendant due process of law when he uses perjured testimony to obtain a conviction. *Jacobs v. Scott*, 513 U.S. 1067, 1067 (1995) (*quoting Mooney v. Hologom*, 294 U.S. 103, 112 (1935)). However, the burden of proof is on the Petitioner to show that the state knowingly used perjured testimony. *Lyde v. Warden*, 1 Md. App. 423, 428 (1967). The Petitioner has put forth no evidence that any perjured testimony was offered or that Mr. Norman acted inappropriately in his prosecution of this case. The only evidence offered is Mr. Anello's recollection of Officer Rubie's statements at Camden Yard where Officer Rubie indicated he had been drinking. Even if Mr. Anello's recollection of the exchange between himself and Officer

9

Rubie at Camden Yards is accurate, the statements do not establish that Mr. Norman violated any of the Rules of Professional Conduct. Officer Rubie clarified any ambiguity when he stated that he felt Mr. Norman had only criticized the quality of his report. Certainly, Mr. Norman's criticism of Officer Rubie's police report would not amount to misconduct. At no time did any witness at the Post Conviction hearing state that Mr. Norman had attempted to change or influence their testimony.

The Petitioner also argues that Mr. Norman violated Rule 3.4(c) of the Rules of Professional Conduct in that he disobeyed a tribunal by not adhering to the Rules of Professional Conduct. The Petitioner has offered no evidence to support his allegation. Bald allegations are not cognizable under the Post Conviction Act. *Cirincione, supra.*

The Petitioner also asserts that Mr. Norman violated Rule 8.4(a),(c),(d), and (e) of the Rules of Professional Conduct. Rule 8.4 states in pertinent part:

**Misconduct**
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or to do so through the acts of another;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(e) state or imply any ability to influence a governmental agency or official[.]

The Petitioner has put forth no evidence that Mr. Norman committed prosecutorial misconduct or violated any of the Maryland Rules of Professional Conduct. Again, the burden of proof is on the Petitioner, as the moving party, to prove that the prosecutor committed some type of misconduct. *State v. Hardy*, 2 Md. App. 150, 156 (1967). The evidence adduced at the Post Conviction hearing is insufficient to support such an allegation. Therefore, Post Conviction Relief as to Ground One is DENIED.

Paper No. 13, Exhibit 12 at 13-19.

Undesirable remarks or actions by the prosecution do not necessarily mandate a new trial,

unless they so infect the trial with unfairness that the resulting conviction is a denial of due

process. *See Darden v. Wainwright*, 477 U.S. 168 (1986), *United States v. Weatherless*, 734 F.2d

10

179 (4th Cir. 1994).  In determining whether improper prosecutorial comments so damaged the trial as to require reversal, this court must consider (1) the degree to which the comments misled the jury and prejudiced the accused; (2) whether the comments were isolated or extensive; (3) whether competent proof established guilt, irrespective of the comments; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.  *See United States v. Harrison*, 716 F.2d 1050 (4th Cir. 1983); *United States v. Brockington*, 849 F.2d 872 (4th Cir. 1988); *United States v. Odom*, 736 F.2d 104 (4th Cir. 1984).  Here, evidence of guilt was overwhelming and Officer Rubie testified under oath at the post-conviction hearing, that the prosecutor did not attempt to change his testimony. Officer Rubies' version of his discussion with Mr. Anello's differed dramatically from Mr. Anello's account and the post-conviction court found Rubies' version to be true.  As such, the post conviction court's finding will be deemed presumptively correct, pursuant to 28 U.S.C. §2254(d) and (e).

## 2. Defective Jury trial Waiver

In rejecting petitioner's claim that his jury trial waiver was defective, the post-conviction court found as follows:

> The Petitioner alleges a second ground for Post Conviction Relief, stating that Mr. Norman's Prosecutorial Misconduct caused his waiver of a jury trial to be unknowing and unintelligent.  Petitioner asserts that his decision to waive a jury trial was based upon fear and a lack of information.  His decision was also based upon Judge Howe's decision that the State's Attorney had not acted inappropriately when their office participated in the "Unsolved Mysteries" video. Petitioner presumed that Judge Howe would not prohibit the state from showing the video involving he Petitioner to the jury.  Petitioner believed that he enactment would be prejudicial.

> The State, in its response, argues that at no time were they ever intending to offer a copy of the "Unsolved mysteries" video into evidence.  Mr. Norman concedes that the tape would have been inadmissible if offered....

Judge Howe took the Petitioner's election on February 9, 1998 at which time she and Petitioner's trial attorney fully explained his right to a trial by jury.

| | |
|---|---|
| The Court: | Now, please try to qualify your client for, elect between a court trial and a jury trial. |
| Mr. Anello: | If I may ask him on the record, your Honor. |
| The Court: | Mm-hmm. Please. |
| Mr. Anello: | Mr. Spinnato, we've discussed this many times, and I'm gonna do it on the record. You have a right to be tried upon this jury–upon these charges by a jury for the Circuit Court of Baltimore County. A jury consists of 12 citizens chosen at random from the voters lists in Baltimore County, motor-voter lists of Baltimore County, and I would have a limited right to participate in the selection of that jury, in fact, in this case. |
| The Court: | Wait a minute. You have to slow down, because to Reporter– |
| Mr. Anello: | I'm sorry, your Honor. |
| The Court: | –write down what you are saying. |
| Mr. Anello: | And I would have a limited right to participate in the, in the selection of that jury. In this case you would also be entitled, because of the nature of the charges, to 10 peremptory strikes. Now, in order for you to be found guilty by a jury, each and every member of that jury by you on–unanimously would have to find that you stand guilty, of a standard beyond all reasonable doubt, to a moral certainty. Understanding your right to a jury trial, do you wish to be tried by a jury or tried before this court? What is your decision? |
| The Court: | Wait one second. Wait a second. That if you do not wish to have a jury trial that the case would proceed before me as the trier of fact and, ultimately, for me to decide beyond a reasonable doubt as the standard whether you were not guilty or guilty of all of the offenses charged in the two cases now called against you? You understand that? |

12

Mr. Spinnato:  Yes, ma'am.

The Court:     Are you familiar with the charges against you in these two cases?

Mr. Spinnato:  Yes ma'am, I am.

The Court:     Do you give up your right for me to be required to read out loud to you all of the charges against you?

Mr. Spinnato:  Yes, Ma'am.

The Court:     Okay.  Have you had an opportunity to talk to Mr. Anello about your choice between a court trial and a jury trial?

Mr. Spinnato:  Yes, Ma'am I have.

The Court:     Do you have any question about what a court trial is and what a jury trial is?

Mr. Spinnato:  No ma'am I don't.

The Court:     Do you understand that, the differences between a court trial and a jury trial?

Mr. Spinnato:  Yes, ma'am, I do.

The Court:     All right.  Now, Mr. Anello, anything further–

Mr. Anello:    No.

The Court:     –you, from the state? Anything further on the election in–

Mr. Norman:    No, your Honor.

The Court:     All right.  Mr. Spinnato, have you made a choice between a court trial and a jury trial?

Mr. Spinnato:  Yes, ma'am, I have.

The Court:     And what is that choice?

13

Mr. Spinnato: I'm gonna go with a judge.

The Court: You wish to waive your right to the jury trial–

Mr. Spinnato: Yes ma'am.

The Court: and elect to be tried by me as the trier of fact and, ultimately, to decide your guilt or innocence; is that correct?

Mr. Spinnato: Yes, ma'am.

Trial Transcript 2/9/98 at pp. 13-16.

At that point Judge Howe and Mr. Brown (Shafer's trial attorney) qualified Mr. Shafer, making sure that he also understood his right to be tried by a jury. Before accepting the elections for each of the defendant's, Judge Howe again asks the defendants if they are certain that they would like to have a court trial.

The Court: Okay. Now, Mr. Spinnato stand up again for just a moment, please. I want to make sure that both of you understand that once this case begins that you can't change your mind–

Mr. Spinnato: Right.

The Court: –we have–we begin the case and then say wait a minute; I think I made a mistake; now I want to have a jury trial–

Mr. Spinnato: I understand.

The Court: –this is irrevocable election. And once you give up your right for a jury trial for these cases it is gone forever. You understand that Mr. Spinnato?

Mr. Spinnato: Yes, ma'am. Could I –

The Court: Does that change your mind about what you're going to do here today?

Mr. Spinnato: No ma'am. I do–

14

The Court:     You still wish to elect a court trial: is that correct?

Mr. Spinnato: Yes, ma'am.

Trial Transcript 2/9/98 at 20.

There is no evidence to support the claim that Petitioner's decision to waive his right to a trial by jury was done unknowingly or unintelligently. All evidence in the record points to the contrary. The Petitioner or his attorney could have inquired about the jury selection process at the time the election was made. There is no allegation that Petitioner's trial attorney was ineffective in his failure to explain the election of a jury trial to the Petitioner. In fact, the Petitioner stated clearly on the record that he discussed the matter thoroughly with his trial attorney and wished to proceed with a court trial.

*Judge Howe's Review of the "Unsolved Mysteries" Video*

The Petitioner alleges that the very existence of the "Unsolved Mysteries" view and Judge Howe's review of it made him believe that he could not get a fair trial. The tape was never offered into evidence as a part of the State's case-in-chief and any potential prejudice to the Petitioner, could have been addressed during voir dire had the petitioner elected to have a jury trial. This is a bald allegation, predicated upon speculation, and does not support the Petitioner's request for Post Conviction relief.

*Mr. Norman's Alleged Misconduct*

The Petitioner also states that Officer Rubie's decision not to come forward with information that Mr. Norman had coached Mr. Hogg or pressured him about the police report resulted in Petitioner's decision to unknowingly and unintelligently wive a jury trial. There was no evidence offered at the Post Conviction hearing to support the allegation that Mr. Norman acted in appropriately. Where the petitioner fails to prove the facts necessary, the allegation may be denied as a bald allegation. *Duff v. Warden*, 274 Md. 646, 648 (1964). For this reason, and for the reasons already set forth in this discussion, the Petitioner's request for Post Conviction relief on the basis that he unknowingly and unintelligently waive a jury trial, as set forth in Ground Two, is DENIED.

Paper No. 13, Ex. 12 at 19-24.

The waiver of a defendant's right to be tried by a jury must be knowing and voluntary.

*See Adams v. United States*, 317 U.S. 269, 270-81 (1942); *Brickhouse v. Zahradnick*, 553 F. 340

(4th Cir. 1977) (holding that defendant's waiver was not involuntary or coerced due to his fear

that the ten prevailing rules for selecting a jury made it more likely that a jury would impose a

death sentence). Given the colloquy between petitioner and the trial court regarding his waiver

of his right to be tried by a jury, the state court's ruling that petitioner's waiver was knowing and

voluntary survives scrutiny under 28 U.S.C. § 2254(d).

**3.    Television Appearance**

In rejecting petitioner's claim of prejudice due to the state's attorney's appearance on a

television show, the Post Conviction Court found as follows:

> On November 24, 1997, before the Petitioner had waived his right to a jury
> trial, Judge Howe explained the voir dire process and how it would be conducted
> to insure that the Petitioner had an impartial trial. (Motions Transcript at 67-68).
> In addition, Petitioner was represented by counsel at the time who was also
> available to dispel any misconceptions that the Petitioner may have had, at the
> time he waived his right to a jury trial.
>
> As noted by the trial court, Rule 3.6 of the Rules of Professional Conduct
> allows dissemination of information to assist in the apprehension of fugitives.
> (Motions Transcript at 68). At the time the show aired, the Petitioner had fled the
> jurisdiction to avoid prosecution. Judge Howe reviewed the actions of the State's
> attorney's Office and found that no misconduct had occurred,
>
>> Now, I've watched the entire tape. I have absolutely no
>> idea if, at the end of this program, there's any form of disclaimer
>> either in the written or verbal form. I simply don't know the
>> answer to that. In any event, the, the language which is really
>> operable here is statements by an attorney that would have the
>> likelihood of materially prejudicing an adjudicative proceeding,
>> and I do not find in this case that anything done on this program
>> will have any such likelihood.
>>
>> Certainly there is a voir dire process . Any potential juror
>> who might have possibly seen this particular television show can
>> be excluded for cause at the time the jury is selected so that you
>> could not have a taint. Motions Transcript at 67-68.

16

As stated above, a proper voir dire examination would have alleviated any possibility that a juror would have been exposed to prejudicial information regarding the Petitioner's case. There was no evidence presented at the Post Conviction hearing that supports the claim that the Petitioner was denied due process or a right to a fair trial by the State's Attorney's participation in the "Unsolved Mysteries" video. A bald allegation unsupported by the record is not an appropriate basis for Post Conviction Relief. *Tucker v. Warden*, 243 Md. 331, 333 (1966). For these reasons, the Petitioner's request for Post Conviction relief as to Ground Three is DENIED.

Paper No. 13, Ex. 12 at 24 -25.

The undersigned agrees with the state court that petitioner's waiver of his right to a jury trial was knowing and voluntary and not influenced by the existence of the episode of "Unsolved Mysteries." Accordingly, petitioner's misapprehension regarding the showing of the "Unsolved Mysteries" video does not form a basis for habeas relief. Moreover, as noted by the post-conviction court any prejudice attaching to the pool of potential jurors due to the airing of the television show could have been uncovered during voir dire. Accordingly, this claim does not entitle petitioner to federal habeas relief.

**4.    State's Attorney Violation of Maryland Rules**

In rejecting petitioner's next claim, (the mirror image of the preceding claim), the post-conviction court stated:

In Ground Four, the Petitioner alleges that the prosecutor's failure to comply with the Rules of Professional Conduct also contributed to his denial of rights of Due Process and Fair Trial. The Petitioner asserts that the airing of the "Unsolved Mysteries" video violated the Rule of Professional Conduct prohibiting ex parte communication with judge and jurors. He also alleges that Mr. Norman encouraged his witnesses to offer perjured testimony. In addition, Petitioner alleges that Mr. Norman did not properly control Mr. Hogg from making extra-judicial statements as required by Maryland Rule of Professional Conduct 3.6. Petitioner also alleges that Mr. Norman made statements which materially prejudiced him at trial.

17

These issues were argued before Judge Howe who found that no misconduct had occurred. The Petitioner failed to appeal Judge Howe's decision and it may be considered to be waived. As sated above, a Petitioner must set forth "special circumstances" to excuse such a waiver before a Post Conviction court may hear the issue. Petitioner alleges that appellate counsel was ineffective for his failure to argue his issue on appeal. Assuming arguendo, that Petitioner has not waived this issue, this court agrees with Judge Howe's finding that the State's Attorney's Office did not commit misconduct by their participation in the episode of "Unsolved Mysteries" video.

*Ex Parte Communications with Judge and Jurors*

The Petitioner has set forth nothing to support the allegation that Mr. Norman had ex parte communications with judges or jurors by virtue of his participation in the "Unsolved Mysteries" episode. Since there were no jurors impaneled, Mr. Norman could not have violated this rule. Judge Howe did view this videotape but only in the context of a pre-trial motion. As will be addressed later in this opinion, the Court of Special Appeals already determined that Judge Howe had not been biased by her reviewing the "Unsolved Mysteries" tape. The Petitioner has failed to offer sufficient facts in support of this allegation. Where the petitioner fails to prove the facts necessary, the allegation may be denied as a bald allegation. *Duff v. Warden*, 274 Md. 646, 648 (1964).

*Extrajudicial Statements*

In Part A of this discussion, this court addressed the Petitioner's assertion that Mr. Norman presented perjured testimony and found it to be without sufficient factual basis.

The court then set out the full text of Rule 3.6 of the Maryland Rules of Professional Conduct

before continuing as follows:

This same issue was before Judge Howe at the motions hearing on November 24, 1997, where she determined that the State's Attorney's Office had not acted inappropriately in its participation in the "Unsolved Mysteries" video. The court found that Mr. Norman's actions had not materially prejudiced the defendant and that the Assistant State's Attorney was permitted to make such public statements as necessary to warn of danger or to apprehend a suspect who was still at large. At the time the television show was aired, the Petitioner had failed to appear for his court date and had absconded to Texas. As previously stated, Judge Howe reminded the Petitioner that any potential prejudice could have been avoided by

18

the voir dire process. (Transcript 11/24/97 at 67-70).

*Prosecutor's Exercise of Control over Extrajudicial Statements*

     The petitioner alleges that Mr. Norman violated Rule 3.8(e) of the Rules of Professional Conduct when he allowed Mr. Hogg to participate in "Unsolved Mysteries" video.  The Rule states that,

> The prosecutor in a criminal case shall: (e) exercise reasonable care to prevent an employee or other person under the control of a prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6.

Judge Howe also addressed this issue and found that Mr. Hogg was not a person "under the control of the prosecutor" as contemplated by the rule.  Thus, Rule 3.8(a) was wholly inapplicable and not grounds for a dismissal.  (Transcript 11/24/97 at 68-69).

     There was nothing in the content of the "Unsolved Mysteries" video that contradicted either Officer Rubies' police report or Mr. Hogg's sworn testimony that would have materially prejudiced the outcome of the case.  This court agrees with Judge Howe's application of Rule 3.8(e).  We find that even if Mr. Hogg made statements that could have been prejudicial to the Petitioner, he was not under the control of the State's Attorney's Office so as to come under the purview of Rule 3.8(e).

     The Petitioner has failed to set forth sufficient evidence in support of his allegations of misconduct.  For this reason and for those reasons stated above, Post Conviction relief as to Ground Four is DENIED.

Paper No. 13, Ex. 12 at 25-30.

     To the extent petitioner's claim is based on a violation of the Maryland Rules, his claim is insufficient to state a basis for federal habeas relief and is not subject to review by this court. *See Spencer v. Murray*, 18 F.3d 237, 239-40 (4th Cir. 1994).  To the extent petitioner's claim is cognizable as stating a claim of denial of due process, his claim fails. As previously discussed, undesirable remarks or actions by the prosecution do not necessarily mandate a new trial, unless

19

they so infect the trial with unfairness that the resulting conviction is a denial of due process. *See*

*Darden* 477 U.S. 168 (1986). Evidence of petitioner's guilt was overwhelming and petitioner

failed to prove his allegations of misconduct. The post -conviction court's findings of facts are

deemed presumptively correct, pursuant to 28 U.S.C. §2254(d) and (e), and accordingly the

decision of that court shall not be disturbed.

## 5.    Trial Judge Failed to Recuse Herself

In rejecting petitioner's contention that the trial judge erred in failing to recuse herself,

the post conviction court found:

> In Ground Five, the Petitioner alleges that he was denied his right to a fair
> and impartial trial because the trial judge failed to recuse herself when she
> exposed herself to the extrajudicial statements made by the State's Attorney on
> the national television program, "Unsolved Mysteries". Petitioner alleges that
> after viewing the video, the trial judge exhibited bias in favor of the Assistant
> State's Attorney by ignoring numerous violations of the Rules of Professional
> Conduct. In addition, the trial judge was exposed to a fictitious portrayal of actual
> events which were in dispute by the defense. Her bias of the Defendant was
> evidenced by her statement on the record that certain psychological evaluations
> were a waste of time....

> The Court of Special Appeals in its opinion dated April 22, 1999,
> addressed the merits of Petitioner's assertion that Judge Howe's failure to recuse
> herself after viewing the "Unsolved Mysteries" video featuring the events
> surrounding the charges resulted in a deprivation of the Petitioner's right to a fair
> trial. The Court of Special Appeals, in its unpublished opinion, stated,

>> "[T]here is a strong presumption in Maryland...that judges are
>> impartial participants in the legal process, whose duty to preside
>> when qualified is as strong as their duty to refrain from presiding
>> when not qualified." *Jefferson-El v. State*, 330 Md. 99, 107 (1993)
>> (citations omitted). The decision to recuse oneself is a
>> discretionary one, and the exercise of that discretion will not be
>> overturned on appeal unless an abuse of discretion is shown. *Id.*
>> In order to demonstrate such abuse, a party must show that the trial
>> judge had a "personal bias or prejudice" concerning the party or
>> "personal knowledge of disputed evidentiary facts concerning the

proceeding." Id.  Only bias, knowledge, or prejudice derived from an extrajudicial source is considered "personal."  Knowledge acquired by a judge in prior proceedings involving the same is not "personal."  *Boyd v. State*, 321 Md. 69, 78 (1990).

In the present case, any knowledge that the trial judge acquired from viewing the videotape was acquired during the course of the judicial proceeding.  The knowledge was not "personal" and did not require the judge to recuse herself.  Further, the trial judge disagreed that she had been prejudiced by what defense counsel called a graphic portrayal of appellant.  She stated that, in fact, when she received the Motion to Recuse, she did not even recall the motions hearing.  She further stated that she could render a fair and impartial verdict in the case.  We see nothing in the record of this case that the trial judge was unable to do so.  Under the circumstances, the judge did not abuse her discretion in refusing to reuse herself from the hearing in this case.

*Spinnato v. State*, No. 842, slip op. At 15-16 (April 22, 1999).

The Petitioner addressed this issue on appeal with no success and cannot revisit the issue now.  Assuming, arguendo, that the Petitioner could address this issue at the post conviction level, we agree with the Court of Special Appeals' assessment that Judge Howe did not abuse her discretion in failing to recuse herself after having viewed the dramatization contained in the "Unsolved Mysteries" video.

Paper No. 13, Ex. 12, at 30-32.

Petitioner has presented no evidence that the trial judge showed bias or prejudice which should have warranted her recusal from his state proceedings.  *See Shaw v. Martin*, 733 F. 2d 304 (4th Cir. 1984). The state appellate and post-conviction courts' findings are supported by the record and shall not be disturbed.

6.     **Petitioner's Sixth Amendment Claims**

To establish a claim of ineffective assistance of counsel under *Strickland  v. Washington*, 466 U.S. 668 (1984), a convicted defendant must demonstrate: (1) that counsel's performance

"fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id.* at 688, 692.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The ultimate focus of the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, a court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688.   In its analysis, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotations omitted).  A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable.  *Id.* at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.   Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

In rejecting petitioner's claim that his appellate counsel was ineffective, the post-

conviction court found as follows:

> In Ground Six, petitioner alleges that he was denied his right to counsel in that appellate counsel was ineffective for failing to obtain the pre-trial transcript regarding the issue of Judge Howe's recusal, for failing to consult with Petitioner regarding the grounds for appeal, for failing to communicate with Petitioner's trial counsel, and for ignoring Petitioner's correspondence.

*Effective Assistance of Counsel*

> The right to assistance of an attorney in a criminal trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *See State v. Renshaw*, 276 Md. 259, 264, 347 A. 2d 219 (1975). "The right to counsel is the right to effective assistance of counsel, the benchmark of which is whether counsel's advocacy was sufficient to maintain confidence that the adversarial process was capable of producing a just result." *Cirincione v. State*, 119 Md. App. 471, 484, 705 A.2d 96, *cert. denied*, 350 Md. 275, 711 A.2d 868 (1998). In evaluating a claim for ineffective assistance of counsel, this Court will apply the test set forth in the case of *Strickland vs. Washington*, 466 U.S. 668, 102 S.Ct. 2052 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for determining whether a defendant had been deprived of his constitutional right to counsel by virtue of counsel's ineffectiveness. A Petitioner must show (1) that counsel performance was deficient and (2) that the alleged acts of omissions of counsel prejudiced the Petitioner's defense. As to the first prong, the Petitioner must show that, "acts or omissions...are the result of unreasonable professional judgment and that the counsel's performance, given all the circumstances, fell below an objective standard of reasonableness considering prevailing professional norms." *State v. Tichnell*, 306 Md. 428, 509 A. 2d 1179, 1185 (1986). In order to demonstrate prejudice, the Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland, supra*, at 694. The deficiency prong requires that the Petitioner bears the burden of: (1) identifying the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment; (2) showing that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (3) overcoming the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id*. at 690.

*The Motions Transcript*

> The Petitioner's appellate attorney, Kreg Greer's, failure to obtain a copy of the motion's transcript was resolved at the Post Conviction hearing. Assistant

23

State's Attorney, Stephen Roscher questioned Mr. Greer regarding the transcript as follows:

Q.    You did not have at that time of the appeal a transcript of the November 24, 1997 motions hearing, is that correct?

A.    That's right.

Q.    Have you since that time gotten a copy of that from me?

A.    Yes.

Q.    Did you examine that to see if there were any issues raised in that motions hearing before Judge Howe that would have affected the appeal in any fashion?

A.    The relevant issue was recusal and that did not come up in any way in that motions hearing. That motions hearing dealt with a Motion to Dismiss the indictment and to bar all prosecutors in the Baltimore County State's Attorney's Office from prosecuting this particular case, as I recall, and I think there was a final motion by the State to preclude Mr. Spinnato from raising an NCR plea. That was it as far as that motions hearing was concerned, excuse me.

It is evident from the testimony at the post conviction hearing, that even if Mr. Greer was ineffective in failing to obtain a copy of the motions hearing transcript, the Petitioner has failed to demonstrate that Mr. Greer's omission in anyway prejudiced the Petitioner.

*Appellant Counsel's Failure to Raise Issues on Appeal*

Petitioner alleges that Mr. Greer was ineffective in his failure to raise any of the issues contained within his Post Conviction Petition. This court has thoroughly addressed each of the issues contained in this petition and found them to be without merit. It is the role of the appellate counsel to seek out those issues which are most likely to be meritorious on appeal. As stated above, the Petitioner must overcome the presumption that the challenged decision was sound trial strategy. *Strickland* at 690. Mr. Greer testified that before filing his appeal, he read the file and each of the transcripts in order to determine which issues were most likely to succeed on appeal. (Post Conviction transcript at 57). Accordingly, appellate counsel was not ineffective for his failure to raise each of the grounds raised in the Post Conviction petition on appeal.

24

*Appellate Counsels' Failure to Communicate*

Petitioner also alleges that appellate counsel was ineffective in his failure to communicate with the Petitioner or to respond to Petitioner's phone calls and messages left by his sister. Mr. Greer testified at the Post Conviction hearing that he maintained an open line of communication with Mr. Anello, Petitioner's trial attorney, with whom he had discussed the most appealable issues. (Post Conviction transcript at 59). Petitioner has failed to set forth any way in which he was prejudiced by failing to speak with the Petitioner or his sister.

The Petitioner has failed to satisfy the requirements set forth in Strickland and its progeny in support of his claim of appellate counsel's ineffectiveness. For this reason, Petitioner's request for Post Conviction relief as to Ground Six is DENIED.

Paper No. 13, Ex. 12, at 35-38

Claims alleging ineffective assistance of appellate counsel are analyzed under the *Strickland* standard. *See Smith v. Robins*, 528 U.S. 259, 285 (2000). Here petitioner faults appellate counsel for failing to (1) secure the pre-trial motions transcript; (2) consult and communicate with petitioner; and (3) consult with trial counsel. The post-conviction court's rejection of each of petitioner's claims regarding the performance of appellate counsel is supported by the record.

As noted by the post-conviction court, the pre-trial motions hearing did not address the issue of the trial judge's recusal. Moreover, this court has found that there was no constitutional error in the trial judge's refusal to recuse herself. Accordingly, petitioner is unable to demonstrate prejudice as to counsel's failure to investigate or argue the issue of the trial judge's recusal on appeal.

As to petitioner's arguments that appellate counsel failed to properly communicate and failed to raise other arguments on appeal, petitioner has failed to demonstrate prejudice as the result of the action or inaction of appellate counsel. Appellate counsel was not required to raise

all issues at the expense of burying good arguments. *See Jones v. Barnes*, 463 U.S. 745, 753-54 (1983).

### 7.    Claim of Defective Jury Trial Waiver Based on Television Appearance

In rejecting this claim (which touches on several other claims previously raised by petitioner), the post conviction court relied on the same reasoning in the earliest portions of its opinion.

> In Ground Seven the Petitioner argues that Mr. Norman's appearance on "Unsolved Mysteries" to re-enact factual events which were still in dispute interfered with Petitioner's right to a fair trial, in that, Petitioner feared he would not be able to select and impanel an impartial jury.
>
> As stated previously, this claim is likely waived due to petitioner's failure to raise this issue on appeal. However, if this court were convinced that "special circumstances" exist, such a waiver may be excused. Petitioner alleges that Appellate counsel was ineffective in failing to raise this issue on appeal. Assuming this is the case, there is insufficient evidence to support his claim.
>
> This court has fully addressed the issue of whether the Petitioner had knowingly and intelligently waived his right to a trial by jury. The petitioner has put forth no evidence to support his allegation or the allegation that he was denied his right to a fair trial. For the reasons already set forth in Parts B, C, and D of this Petition, Post Conviction Relief is denied as to Ground Seven.

Paper No. 13, Ex. 12 at 33.

The post-conviction court's finding that petitioner's waiver of a jury trial was knowing and voluntary is supported by the record and for the reasons previously stated will not be disturbed here.

### 8.    Improper Restriction of Cross-Examination

In rejecting petitioner's final claim, that the trial court erred when it precluded him from inquiring into Hogg's psychiatric history on cross examination, the state court held as follows:

In Ground Eight, the Petitioner alleges that the trial court committed reversible error by preventing effective cross-examination of the State's chief witness concerning impeachment of his prior psychiatric record. The Petitioner alleges that Mr. Hogg's testimony was an exaggeration of the events and cross-examination of his psychiatric history would have brought forth such evidence.

Again, it appears the Petitioner has waived this argument for the purpose of Post Conviction review. Assuming the issue may be raised at this time, the claim is without merit. Mr. Hogg's psychiatric record was not the proper subject for impeachment. Mr. Hogg denied having a history of emotional problems prior to this event. (Transcript 2/9/98 at 184). There was no evidence offered at the Post Conviction hearing to support the claim that the trial court erred in not allowing cross-examination on the issue of Mr. Hogg's psychiatric history. The Petitioner cites *Eiler v. State*, 63 Md. App. 439 (1985), in arguing that such a decision constitutes reversible error.

While the court in *Eiler* was concerned with the cross-examination of the State's key witness on the issues of her prior psychiatric record, that case is distinguishable from the one at bar. In *Eiler*, trial counsel properly preserved the issue and offered evidence as to what the testimony would reveal had cross-examination been allowed. Id. at 446. The witness had a disorder that interfered with her ability to recall certain events. The trial record was replete with instances where she could not recall events surrounding the crime. Id. at 450. In addition, there was proffered evidence that her psychiatrist would testify that she suffered from mental disorders that interfered with her ability to recall and realistically perceive events occurring around her. Id.

Even if the Petitioner is permitted to raise this allegation here, there is no evidence that Mr. Hogg could not recall events surrounding the charges, that he had any mental infirmity that interfered with his memory, or that he was taking medication that interfered with his memory or perception. Without such evidence, there were no grounds for the trial court to allow Mr. Anello to pry into his privileged relationship with his psychologist or counselor. See *Testerman v. State*, 61 Md. App. 257 (1985). Accordingly, Post conviction relief as to Ground Eight is DENIED.

Paper No. 13, Ex. 12.

The right to an effective cross-examination is an integral part of the right of confrontation guaranteed under the Sixth Amendment and  made applicable to the States by the Fourteenth Amendment. *See Roberts v. Russell*, 392 U.S. 293, 294 (1968). While the scope and extent of

cross-examination is generally within the sound discretion of the trial court, that discretion must be exercised with due regard for a defendant's constitutional rights. Specifically, it is an abuse of discretion and a violation of constitutional rights to deny to a defendant the right to cross-examine a witness at all on "a subject matter relevant to the witness's credibility." *See Snyder v. Coiner*, 510 F.2d 224, 227 (4th Cir. 1975). The post-conviction court's determination that there were no grounds for trial counsel's inquiry into the victim's psychiatric background is supported by the record. Accordingly, the trial court's limitation on cross-examination as to the victim's privileged relationship with mental health professionals did not deprive petitioner of his constitutional rights and shall not serve as the basis for federal habeas relief.

## IV. CONCLUSION

Review of petitioner's claims, together with the exhibits provided by the parties, lead this court to conclude that petitioner cannot sustain the burden required by 28 U.S.C. § 2254(d). The post-conviction decision represents sound legal reasoning as well as a reasonable application of well established federal law. Mr. Spinnato cannot show that his counsel's performance was constitutionally deficient, nor can he establish that any alleged deficiency in the trial proceedings or actions by the prosecutor, so prejudiced his cause that a different result would have occurred but for those deficiencies. For this reason his petition must be dismissed. A separate Order shall be entered reflecting the foregoing Opinion.

1/3/07
(Date)

J. Frederick Motz
United States District Judge

28